WILLIAM E. WAMSLEY, Appellant, *v.* H. L. HORTON & COMPANY, LIMITED, Respondent.

| 77 | 317 |
| 87 | 347 |

*Contract to sell what the vendor does not own — test as to intention — a recital in a contract of a non-enforcible option does not nullify the contract.*

It is a general rule of law that a man may contract for the sale of a specific thing which is not his own at the time, but among the exceptions to such rule are agreements to sell something which at the time belongs to the buyer, or to sell property which cannot be the subject of private ownership.

The usual test as to whether there was an intent to contract is not whether the thing contracted to be done is absolutely impossible, but whether reasonable men in the position of the parties must treat it as impossible. (O'BRIEN, J., dissenting.)

In an action brought to recover damages caused by a failure to perform an agreement, it appeared that the plaintiff's assignor had entered into an agreement with a firm by which the latter, in behalf of the stockholders of a corporation, undertook to give the former an option for the purchase of all the stock of such corporation which the former in terms accepted. This writing was not enforcible by or against either party, one of the parties reserving the right to terminate it at pleasure and the other not being bound thereby.

Thereafter the plaintiff's assignor entered into an agreement with the defendant by which he bound himself to sell and deliver the stock of such corporation within a specified time to the defendant, who in turn agreed to form a corporation and take the stock at an agreed price therefor. The attempted option was recited in the second agreement which was under seal and recited a money consideration.

*Held*, that the recital of the attempted option did not operate to nullify that which otherwise would have been a perfectly valid agreement. (O'BRIEN, J., dissenting.)

APPEAL by the plaintiff, William E. Wamsley, from an interlocutory judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 24th day of November, 1893, upon the decision of the court rendered at the New York Special Term, and also from an order made at the New York Special Term and entered in said clerk's office on the 11th day of November, 1893, sustaining the defendant's demurrer to the complaint.

*Alexander S. Bacon*, for the appellant.

*John R. Dos Passos*, for the respondent.

PARKER, J.:

Plaintiff's assignor, Flanders, and Stout & Douglass executed a writing in which the latter, in behalf of all the stockholders of The Knapp, Stout & Co. Company, pretended to give to the former an option for the purchase of all the stock of the corporation, aggregating 4,000 shares of $1,000 each, which he in terms accepted.

This writing, which for convenience will be called an option, was not enforcible by either party. Stout & Douglass reserved therein the right to terminate the option at any time if dissatisfied with the progress of Flanders in his negotiations for a sale, while Flanders was in no way bound by it.

But Flanders, apparently confident that the option was enforcible, entered into an agreement with the defendant by which he bound himself to sell and deliver the 4,000 shares of The Knapp, Stout & Co. Company, within a time specified, to defendant, who in turn agreed to form a corporation to take the stock and pay the agreed price therefor in the event that the representations of Flanders as to the gross and net income of the business and value of assets should be verified by them in the manner provided in the agreement.

This plaintiff, as assignee of Flanders, seeks through this action to recover against the defendants because of their failure to perform the agreement.

The validity of the agreement is now challenged. It is urged that the recital of the alleged option between Flanders and Stout & Douglass, which was in reality of no effect, operated to nullify that which otherwise would have been a perfectly valid agreement.

This harmful and unintended result, it is said, comes from the fact that, by the appearance of the option in the contract, H. L. Horton & Co. were apprised that Flanders was not the owner of the stock, and that the option under which he expected to be able to procure it was not enforcible.

It has been said in a tentative way that the only consideration for the agreement was the option, and that being void, the agreement was without support in that respect. But there is nothing in the suggestion. The agreement is under seal and beyond that expressly recites a money consideration.

We have, then, to meet the suggestion that, as both parties to the contract must be presumed to have known that Flanders could

not have enforced the option, and, therefore, might not be able to deliver the stock which he contracted to sell, neither of them was bound by the agreement.

No authority for such a proposition is cited, and it is difficult to conceive of any principle of law relating to contracts which tends to support it.

It is a general rule of law that a man may contract for the sale of a specific thing which is not his own at the time. Among the exceptions to the rule are agreements to sell something which, at the time, belongs to the buyer ; or property which cannot be the subject of private ownership at all, such as public buildings or a ship in the navy. Performance of such an agreement is impossible, either by law or in itself, and, therefore, it becomes void.

The ground on which it is put is that the impossible nature of the promise shows that there was no real intention of contracting, and, therefore, no real agreement, the usual test being not whether the thing contracted to be done is absolutely impossible, but whether reasonable men, in the position of the parties, must treat it as impossible. (Pollock on Cont. 378–382.)

There was nothing in this contract which suggests that performance on Flanders' part would be impossible, or that the parties so understood it, and, therefore, had no intention of contracting, or which would authorize the court to treat it as a contract impossible of performance.

On the contrary, the option indicated that performance by Flanders would be possible, and if, for any reason, it had turned out otherwise, the validity of the contract would not have been affected, the remedy of the other party being an action for damages because of the breach.

It is further urged in support of the order sustaining the demurrer, that the defendant is not bound by the contract pleaded, inasmuch as the name of the corporation appears to have been signed by a director. This position is not well taken because the complaint alleges that the defendant, for a valuable consideration, made, executed and delivered a contract to Flanders, and the demurrer necessarily admits the fact to be as alleged.

Respondent makes the further point that the contract pleaded provides that "if such statements (meaning statements vouched for

by Flanders in the agreement) be substantially incorrect * * * this agreement shall cease and determine and be of no effect," and insists that plaintiff has not alleged that the statements were substantially true and correct.

Without passing on the question whether plaintiff should bear the burden of establishing the truth of the "statements," in view of that provision of the contract wherein the purchaser covenanted to send an expert within five weeks to examine the books of Knapp, Stout & Co. Company, and the promise of the seller that if the examination of the books and assets by the expert should not determine his statements to be substantially correct then the vendee should have the right to decline to proceed further in the matter, we cite a paragraph in the complaint which the respondent has apparently overlooked, in which the plaintiff makes such allegations as entitle him to prove full performance on the part of his assignor. It declares that plaintiff's assignor " performed all the obligations of said contract on his part, and was at all times able, ready and willing to carry out all the conditions thereof, and frequently offered to do so."

The order sustaining the demurrer and the interlocutory judgment entered thereon should be reversed, with costs, the demurrer overruled and defendant allowed to answer within twenty days on payment of costs.

VAN BRUNT, P. J., concurred.

O'BRIEN, J. (dissenting) :

I do not concur in the views or the result reached in this case. The action is brought to recover damages for breach of a contract set forth in the complaint, alleged to have been entered into between one Flanders, who was plaintiff's assignor, and the defendant company. The agreement recites in substance that Flanders obtained from two persons, on behalf of all the stockholders of the Knapp, Stout & Co. Company (which was a corporation engaged in the lumbering business), an option to purchase all the stock of said corporation, consisting of 4,000 shares, which option was to continue until the 1st day of August, 1891. The right to terminate such option was reserved, in the event of the corporation being dissatisfied with the progress made in the negotiation for the sale of the stock upon the terms specified.

Flanders was in no way bound by the agreement, nor is it alleged that he paid any consideration for the option, and if the question here involved were as to the binding force and effect of such an agreement upon the Knapp, Stout & Co. Company, or the persons giving the option, I think that the claim that it was a *nudum pactum* should be sustained, because such an agreement, being a mere offer or option, without any binding or legal effect upon either of the parties, can in no sense be regarded as a contract. Flanders himself did not agree to buy or procure any one else to buy, nor did he undertake or assume any obligations, but without, as it appears, having paid any consideration therefor, he secured an option, under which the parties with whom he was dealing stated that they would deliver to him the capital stock of the corporation provided he complied with certain conditions as to payment, etc., on or before a day specified.

In Story on Contracts (§ 495) it is said: " If, by the terms of an offer, a certain time be prescribed within which it may be accepted by the other party, it must be accepted within that time. The rule of law is, that the party making such an offer may retract it at any time previous to its acceptance by the other party; * * * and the ground upon which this rule is said to be founded is that the offer being merely gratuitous, there is no sufficient consideration to support it until it is accepted."

The same rule is variously stated in Bishop on Contracts (§§ 178–180); Metcalf on Contracts (16); Pollock on Contracts (23); and American and English Encyclopædia of Law (vol. 21, p. 452).

In the so-called agreement between Flanders and the defendant company, this option is set forth and is made the basis of an agreement between them, by the terms of which Flanders agrees to sell, and the defendant to buy, the capital stock of the corporation upon which such option had been secured by Flanders.

No doubt, one not owning property may enter into a valid binding agreement to sell it to another, taking the risk of being able to secure it before the date fixed for the delivery of the property, and if he should fail in his expectations in this regard he would be liable to respond to the purchaser in damages. On the other hand, if the purchaser, under an agreement to purchase, should neglect or

refuse to comply with the conditions, it would give to the vendor a corresponding right of action for damages. These reciprocal rights, however, grow out of the fact that one agrees absolutely and without reservation to sell something, and the other to buy that something, upon terms and conditions fixed between the parties; and thus the mutual promises are sufficient consideration to support the contract in favor of either party. But where, as here, the basis of the agreement between a purchaser and seller is an option with respect to the property to be sold, which is made a part of the agreement, and which distinctly sets forth the relation of the seller to the property, then, unless by the terms of the arrangement the seller is in a position and does in fact enter into an agreement to sell, there would be wanting a consideration sufficient to support the agreement of the purchaser.

An examination of the terms of the alleged agreement relied upon, shows that what the vendor was to give, and what the defendant, as purchaser, was to take, were the rights which the vendor had or held under the option secured from those claiming to represent the stockholders or the corporation itself. Assuming, therefore, that the former recitals, showing a compliance with the terms and conditions of the so-called agreement on Flanders' part, and the neglect or refusal of the defendant to comply with the obligations on its part, are fully set forth, I think the question as to whether this was a binding agreement, or a mere *nudum pactum*, is to be tested by the determination whether or not it could be enforced against Flanders in such a way that if he did not deliver the property agreed to be sold, a corresponding action for damages would result to defendant. Such a test seems to me to be conclusive, because, unless there were some reciprocal binding promises, or in other words, unless Flanders on his part had agreed to sell something, the agreement on the part of the defendant to purchase would be without consideration to support it, and would not give to Flanders a resultant action for damages upon failure of the defendant to comply with the terms of what, in the absence of a better word, may be called an arrangement between the parties.

The parties, in the written arrangement entered into between them, fully set forth what rights Flanders had under his agreement with the corporation, whose option, as alleged, he held, and the

defendant was thereby fully apprised of the fact that such option was not of binding force and effect against either the corporation or the persons who, on its behalf or on behalf of the stockholders, had given it to Flanders, but that it was a mere offer or proposition that they would sell upon certain terms and within a specified time, and which, as already said, was revocable, because without any consideration to support it, and without any binding obligation upon the part of Flanders to purchase. As this underlying arrangement between Flanders and the corporation or the persons from whom he secured the option was not in a strict sense a contract which was enforcible, the defendant company, who had full knowledge by reason of the option being fully set forth, could not enforce any action for damages, even assuming that they had complied with all the conditions on their part, and Flanders had refused to complete, or if by the acts of the corporation or the persons who gave him the option, he was unable to complete. I think, therefore, as this underlying agreement was a *nudum pactum*, and was made the basis of the arrangement between Flanders and the defendant company, that it was not a condition sufficient to support any obligation upon the part of the defendant to purchase, and that a breach by either party would not give to the other an action for damages.

I am of opinion, therefore, that upon this ground the demurrer should be sustained.

The other two contentions in support of the demurrer I do not regard as well taken.

The first, based upon the fact that the agreement appears to be signed on behalf of the defendant company by a director, and that, therefore, it is not a binding agreement of the defendant, is correctly disposed of by the learned judge below in saying: " This claim cannot be sustained because of the allegation in the complaint that the defendant made, executed and delivered the agreement. Under this allegation the plaintiff may prove on the trial that the said Balch was authorized by the defendant to sign its name, and that the agreement was in fact made. executed and delivered ·by the defendant."

I do not think, however, that the judge was equally correct in his conclusion that the demurrer should be sustained upon the ground that, as the agreement provided, if the statements made by Flanders

should be substantially incorrect, that then it was to cease, determine and be of no effect, and inasmuch as he did not allege that such statements were substantially true and correct, he could not be allowed to prove them, and that proof that such statements were correct was a condition precedent which must be alleged to have been complied with before a cause of action in favor of Flanders would arise. In this the judge overlooked the fact that the contract provided the manner in which the verification of the statement was to be made. It was therein provided that the defendant was to employ an expert who was to verify the statements, and that the employment of such expert was to be by and at the expense, in the first instance, of the defendant. As the gravamen of the action was that the defendant had not complied with the conditions of the agreement, and that Flanders had fully performed all the obligations of said contract on his part, it is an erroneous construction to hold that, where the agreement provides that the defendant was, through an expert, employed by him to verify such statements, it is a condition precedent to plaintiff's cause of action to allege and show that the statements were substantially true and correct.

I think, therefore, that it was error to sustain the demurrer upon this ground, as I regard it equally erroneous not to have sustained it upon the ground herein first considered, namely, that the agreement sued on is not a valid, binding agreement, for breach of which an action in favor of plaintiff or his assignor was created.

In my opinion, therefore, the order and interlocutory judgment should be sustained, with costs.

Order and interlocutory judgment reversed, with costs, and demurrer overruled and defendant allowed to answer within twenty days, on payment of costs.