COBB, Judge.
The appellant, Equico Lessors, Inc. (Equico), sued Maruka Machinery Corporation of America (Maruka) for conversion and punitive damages. The issue on this appeal is whether the trial court erred in granting Maruka’s motion for a directed verdict at the conclusion of the evidence presented at trial.
Given the directed verdict against Equico, we must view the facts adduced at trial in the light most favorable to it, as the jury would have been entitled to do. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1121 (Fla.1984); Riccio v. Allstate Insurance Company, 357 So.2d 420, 422 (Fla. 3d DCA 1978). Those facts were: Maruka owned a Kitamura machining center, Model S-15, serial number 8304, and sold it to Mercury on credit, with delivery to Mercury’s premises taking place on March 12, 1980. Maruka did not record any security interest in the machine. Mercury, using Nova Machinery Company, Inc. (Nova), as a conduit of title,[1] sold the machine to Servico Capital Corporation (Servico). Servico leased the machine back to Mercury and simultaneously assigned its lease interest and title to the machine to Equico. Equico verified that the machine was on the lessee’s (Mercury’s) premises on March 13, 1980, and paid Nova the full purchase price of $120,000 for the machine on the following day, March 14, 1980. Nova, in turn, paid Mercury. Mercury, however, did not pay Maruka, as it was obligated to do.
In April, 1980, Equico recorded a financing statement reflecting that Servico had leased the machine to Mercury and that Servico had assigned its entire interest in the lease and the machine to Equico. Mercury made some lease payments to Equico, but ultimately defaulted. In August, 1980, Maruka repossessed the machine from Mercury (which then held it only as a lessee from Equico) because of nonpayment. When Equico found that Mercury had surrendered the Kitamura machine back to Maruka, it filed the instant action against Maruka.
We agree with the trial court in regard to Equico’s punitive damage claim. However, we cannot agree in regard to the conversion count. Under these facts, Ma-ruka could not repossess (via voluntary surrender) from Mercury anything more than Mercury then owned: a leasehold interest in the machine subject to Equico’s ownership of the machine and the lease. Even though Mercury never made any payment to Maruka prior to delivery of the machine to Mercury, title to the machine passed to Mercury upon delivery on March 12, 1980, there being nothing to establish a contrary intent. Equico was a good faith purchaser for value of that equipment from Servico, who acquired it from Mercury through Nova. The fact that Equico directly payed Servico’s predecessor, Nova, is immaterial. What is material is that Maru-ka failed to record its security interest in the machine and thus acquire a priority status ahead of Equico. There was noth *667 ing of record to apprise Equico of Maruka’s claim.
The record indicates that the trial court determined that the transaction between Mercury and Nova, because of their deceptive relationship, was a nullity and, therefore, no title to the machine ever passed to Nova or through Nova, and remained at all times in Mercury. Yet, there was uncon-troverted testimony that the intent of the parties was to effectuate transfer of title from Mercury to Nova, that the necessary paperwork to effectuate such a transfer was executed, and that there was no legal barrier, recorded or otherwise, precluding such a transfer. The fact that the transfer papers preceded Mercury’s physical possession of the machine by approximately a week does not support the directed verdict, as shown by section 672.501, Florida Statutes (1979), which provided:
(1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement, identification occurs: (a) when the contract is made if it is for the sale of goods already existing and identified; (b) if the contract is for the sale of future goods ... when goods are shipped, marked, or otherwise designated by the seller as goods to which the contract refers....
In the instant case the transaction began when Mercury gave its purchase order to Maruka on January 21, 1980. The machine at that point was not identified to the contract; thus, the transaction was for the “sale of future goods.” The machine was “identified” to the contract at least by March 6, 1980, when Nova contracted to sell it to Servico and on March 7, 1980, when Mercury contracted to sell it to Nova. Upon such identification Mercury obtained a “special property” interest in the machine, which ripened into title when physical possession was delivered to it on March 12, 1980. The fact that a seller has neither possession nor title to goods at the time he enters into a contract to sell them does not void the contract. See § 672.105(2), Fla. Stat. (1979). As the appellant argues in its brief:
Thus, in the time period prior to March 12, 1980 Mercury contracted to sell the machine to Nova, Nova contracted to sell the machine to Servico, and Servico contracted to assign the sale to Equico. Each of these parties had a ‘special property’ in the transaction between itself and their immediate seller. Upon the machine’s arrival at Mercury’s premises on March 12,1980, all interest of Maruka terminated (since it retained no security interest). Title vested in Mercury and then instantaneously up the line to Equi-co. All parties testified that there was no delivery contemplated other than the delivery to Mercury. Indeed, the unre-butted testimony of Howard Krollfeifer, Jr., Senior Vice President of Equico, was that he sent an employee to the premises of Mercury to accept delivery on behalf of Equico.
Regardless of what characterization is put on the transaction whether it is a contract for sale, a sale of future goods, or a sale, title vested in Equico no later than March 12, 1980 and never left. Ma-ruka could have protected itself by making a UCC filing, but deliberately chose not to do so.
In the instant case there was no evidence that Maruka reserved title pending payment in the sale agreement with Mercury; thus, title and possession merged in Mercury on March 12, 1980, and passed successively and instantaneously through the subsequent assignees to Equico. See St. Paul Fire & Marine Insurance Company v. Pensacola Diagnostic Center and Breast Clinic, 505 So.2d 513 (Fla. 1st DCA 1987).
Relevant to the instant analysis is the concept of title by estoppel. See 3 R. Anderson, Uniform Commercial Code § 2-401:16 (3d ed. 1983). In this regard, we note that the evidence, construed most favorably to Equico, is susceptible of a finding that Maruka’s failure to retain and *668 record a security interest in the Kitamura machine created the circumstances that enabled Mercury, acting through Nova, to perpetrate the loss upon Equico; therefore, that loss should be borne by Maruka. See Southeast Foods, Inc. v. Penguin Frozen Foods, 203 So.2d 39, 43 (Fla. 3d DCA 1967), cert. denied, 210 So.2d 226 (Fla.1968); Griffin v. Gulf Life Insurance Company, 146 So.2d 901, 903 (Fla. 1st DCA 1962).
We emphasize that in the foregoing analysis we have construed the factual case most strongly in favor of the appellant/plaintiff, Equico — which the trial jury may or may not have done, given the opportunity. However, it should have had that opportunity. Accordingly, the directed verdict as to the punitive damages claim is affirmed, and the directed verdict as to the conversion claim is reversed.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED for further proceedings consistent with this opinion.
COWART and DANIEL, JJ„ concur.

. Mercury was in severe financial straits and could not obtain financing on its own.