**LEVERAGED LEASING ADMINISTRATION CORP., as successor in interest to UCC Leasing, Ltd. and on behalf of; Meyer Dweck; Alan Tripp Singer; Bayless Jewelry, Inc.; Bobby Wilkerson, Inc. and James E. Fitzgerald, Plaintiffs–Appellants,**

v.

**PACIFICORP CAPITAL, INC., as successor in interest to Thomas Nationwide Capital Corporation, Defendant–Appellee.**

No. 1404, Docket 95-9030.

United States Court of Appeals, Second Circuit.

Argued May 23, 1996.

Decided June 24, 1996.

Noel W. Hauser, Noel W. Hauser and Associates, New York City, for Plaintiff–Appellants.

Michael E. Geltner, Geltner & Associates, P.C., Washington, D.C., for Defendant–Appellee.

Before: KEARSE, WINTER and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

This case arises from a series of sale-leaseback transactions of computer equip-ment. Somewhere along the way, somebody lost track of who owned what. The plaintiffs claim that they own the computers; the de-fendant denies it. The district court granted summary judgment in favor of the defendant on all three claims: breach of contract, con-version, and accounting.

Because the complaint alleges only the res-idence, and not the citizenship, of some of the plaintiffs, we cannot determine whether di-versity jurisdiction exists. We therefore re-mand the case to the district court for fur-ther proceedings to establish the citizenship of all of the plaintiffs. We further note that, if jurisdiction does exist, the district court should not have granted summary judgment on the contract and conversion claims.

## I. BACKGROUND

PacifiCorp Capital, Inc. ("PacifiCorp"), is the successor in interest to Thomas Nation-wide Capital Corporation ("Thomas"), a com-pany that purchased computer equipment and then leased it for various terms to end-users.[1] PacifiCorp regularly sold this equip-ment to investors (subject to the end-user leases) who could reap tax advantages stem-ming from rapid depreciation of the comput-er equipment. The transactions were struc-tured so that PacifiCorp would continue to collect the rent on the computers, and the investors would own the equipment outright after the short-term leases to the end-users expired.

The equipment at issue was sold (and leased back) numerous times, from investor to investor. The entire time, the equipment was apparently in the possession of the end-users, and PacifiCorp collected their rental payments.

The plaintiffs claim that, somewhere along the line, they bought the computer equip-ment in question. According to the com-plaint, the chain of title ran from Thomas (now PacifiCorp), to four intermediaries, to UCC Leasing, Ltd., then to a company called Westwind, and finally to the individual plain-tiff-investors. According to the plaintiffs, af-ter the short-term leases to the end-users expired, all remaining rights to the computer

---

1. We will refer to Thomas and Pacificorp inter-changeably throughout the opinion.

equipment (that is, the right to sell the equipment outright or to rent it out to new end-users) belonged to the individual plaintiff-investors. PacifiCorp, however, purportedly either sold the equipment or rented it again, and kept the proceeds.

The plaintiffs brought this suit to compel PacifiCorp to give them the computers (or the sale proceeds from the computers), plus any extra rent that it earned after the initial subleases to the end-users had expired. The complaint asserted three separate claims: breach of contract, conversion, and accounting. PacifiCorp apparently admits that it no longer has title to the computers, but denies that the chain of title runs to the plaintiffs. It claims instead that the equipment was never sold to UCC Leasing in the first place, and, in addition, points to the absence of documents proving each purported subsequent sale.

The district court granted summary judgment in favor of PacifiCorp on all three claims. The plaintiffs appeal.

## II. DISCUSSION

### A. *Diversity Jurisdiction*

■ PacifiCorp argues that the plaintiffs have not proved diversity, which is concededly the only basis for federal jurisdiction over this case. A federal court's lack of subject matter jurisdiction is not waivable by the parties, and we must address jurisdictional questions before reaching the merits. FED. R. CIV. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); *see also Fox v. Board of Trustees,* 42 F.3d 135, 140 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995).

■ It is firmly established that diversity of citizenship " 'should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record.' " *Wolfe v. Hartford Life & Annuity Ins. Co.,* 148 U.S. 389, 13 S.Ct. 602, 37 L.Ed. 493 (1893). It is also clear that a statement of the parties' residence is insufficient to establish their citizenship. *Id.; John Birch Soc'y v. National Broadcasting Co.,* 377 F.2d 194, 199 (2d Cir.1967).

■ The complaint in this case sets forth the citizenship of the three incorporated plaintiffs, but describes the three individual plaintiffs only as "residents" of either New York or Wyoming. If any of those three is a *citizen* of Virginia, however—as is defendant PacifiCorp—then there would be incomplete diversity of the parties. That would suffice to defeat federal jurisdiction under 28 U.S.C. § 1332. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806) (requiring that no plaintiff share citizenship with any defendant), *overruled on other grounds, Louisville, Cincinnati & Charlestown R.R. Co. v. Letson,* 43 U.S. (2 How.) 497, 555, 11 L.Ed. 353 (1844). Based on this record, we cannot find that complete diversity exists.

■ Such a jurisdictional defect can be cured even in the Court of Appeals simply by amending the complaint pursuant to 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). *First Nat'l Bank of Cincinnati v. Pepper,* 454 F.2d 626, 636 (2d Cir.1972) (stating that an appellate court cannot consider any new issue not raised in the district court, except to cure jurisdictional defects under 28 U.S.C. § 1653).

■ Under the present circumstances, however, we believe that a remand is more appropriate. At oral argument, counsel for the plaintiffs represented to the court that he could produce affidavits from each of the plaintiffs setting forth their citizenship. But counsel for the defendant sought an opportunity to contest the factual basis of those affidavits. Even were we to let the plaintiffs amend their complaint in this Court, then, an evidentiary hearing would be required to resolve this factual dispute.

Accordingly, we remand the case for further proceedings as the district court deems suitable, to determine whether jurisdiction exists. And we note that if, on remand, the district court were to find that there is incomplete diversity, it would have discretion either to dismiss the complaint or to permit withdrawal of the nondiverse parties.

In the interests of judicial economy, we add the following observations about the district court's grant of summary judgment, in the event that jurisdiction exists.

## B. *Merits*

### 1. *Breach of Contract*

 The district court rejected the plaintiffs' breach-of-contract claim on the ground that they had failed, as a matter of law, to prove an essential link in the chain of title. According to the sale documents, Westwind had sold the computer equipment to the individual plaintiff-investors on either September 30, 1984, or December 30, 1984. Yet Westwind had nó title to the equipment on those dates, since the sale documents from UCC Leasing to Westwind were dated December 31, 1984. The district court reasoned that since Westwind had no title to convey on September 30 or December 30, its purported transfers to the individual plaintiff-investors were void as a matter of law.

In reaching its conclusion, the court acknowledged the general rule that parties may agree to sell things that they do not yet own. Nevertheless, the court held that according to § 2–401(3) of New York's Uniform Commercial Code, the contract between the parties must explicitly state that the sale is meant to be a future sale—at least where neither the goods nor any documents are to be delivered. *See* N.Y.U.C.C. § 2–401 ("Unless otherwise explicitly agreed where delivery is to be made without moving the goods ... (b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."). Because the parties had not "explicitly agreed" otherwise, the court reasoned, title had to pass—if ever—at the time of contracting. Because Westwind had no title at that time, the sales were void.

 The district court's application of § 2–401's timing provisions was erroneous, however. The common-law rule is clear that, where a seller has no title to goods at the time it enters into a contract to sell them, the contract is not void. *Batchis v. Dlugasch*, 128 Misc. 148, 149, 218 N.Y.S. 369, 369 (Sup.

Ct. 1926) ("It is perfectly proper for one to make a contract to sell a piece of property that he does now own...."); *Wamsley v. H.L. Horton & Co.*, 28 N.Y.S. 423, 424 (Sup. Ct., 1st Dep't 1894) ("It is a general rule of law that a man may contract for the sale of a specific thing which is not his own at the time."); *see also Equico Lessors, Inc. v. Maruka Machinery Corp. of Am.*, 523 So.2d 665, 667 (Fla.Dist.Ct.App.1988).

At most, such contracts are voidable at the option of the purchaser. *See Grassi v. Tatavito Homes, Inc.*, 90 A.D.2d 479, 480, 454 N.Y.S.2d 471, 473 (2d Dep't 1982) (holding that upon the breach of a sale of real estate, a buyer has a right to rescission as well as loss-of-bargain damages), *aff'd*, 58 N.Y.2d 1038, 462 N.Y.S.2d 445, 448 N.E.2d 1356 (1983); *Wright v. Barnes*, 541 So.2d 977, 979 (La.Ct.App.1989) ("The sale of a thing belonging to another is not absolutely null but only relatively so, and such nullity is in the interest of the purchaser."). Here, of course, the plaintiffs are the purchasers and have no interest whatsoever in disclaiming the sale.

 Most often, a contract to sell property not yet owned by the seller is construed as a promise of a future sale, rather than as a present sale. "[T]he law applies a common sense rule that a seller is allowed a reasonable time after payment by the buyer during which he can purchase the goods required to meet his promise." *Patty v. Berryman*, 95 Cal.App.2d 159, 169, 212 P.2d 937 (Dist.Ct. App.1949). This rule of construction is consistent with the definitional section of the U.C.C. *See* N.Y.U.C.C. § 2–106 (" 'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time").

Nor do we think that this common-law rule has been dislodged by the timing provisions of § 2–401(3). The official comment to § 2–401 states that "[t]his Article deals with the issues between seller and buyer in terms of step by step performance or non-performance under the contract for sale *and not in terms of whether or not 'title' to the goods has passed.*" N.Y.U.C.C. § 2–401 cmt. 1 (emphasis added.) Thus, § 2–401(3), by its own terms, is relevant only if there is some dispute as to *when* title passed from West-

wind to the individual plaintiff-investors, not *whether* it passed at all.

Although summary judgment on the breach of contract claim was not warranted on the grounds we have already discussed, we note that Pacificorp challenges various other links in the chain of title. *See* Op. and Order at 12 n. 8, J.A. at 223 (declining to address defendant's contention that neither UCC Leasing nor Westwind properly obtained title). As to these claims we express no opinion. Accordingly, on remand, the district court may consider whether summary judgment on the contract claim is nevertheless proper on these other grounds.

### 2. *Accounting*

■ In order to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with the defendant. *Palazzo v. Palazzo*, 121 A.D.2d 261, 265, 503 N.Y.S.2d 381, 384 (1st Dep't 1986). The plaintiffs have not alleged that PacifiCorp was their agent or fiduciary, and so the district court properly rejected their claim.

In some cases, the New York courts have held that a fiduciary or confidential relationship is not necessary to obtain judicial relief—but they have done this only by treating the action for accounting as an action at law for monetary relief, and not as an equitable action for accounting. E.g., *Arrow Communications Labs. v. Pico Prods. Inc.*, 219 A.D.2d 859, ——, 632 N.Y.S.2d 903, 905 (4th Dep't 1995) ("Where a party seeks an accounting, but the primary demand is for monetary damages, '[t]he accounting is merely a method to determine the amount of the monetary damages. The action therefore sounds in law and not in equity.'") (citation omitted). Because the plaintiffs have sought money damages in both their breach of contract and conversion claims, and because discovery as to the measure of damages would be available to them if they were to prevail on those claims, they can obtain all the information they seek in their existing claims at law. (Obviously, the district court has discretion to bifurcate the proceedings into liability and damages phases, to minimize any unnecessary discovery.) Accordingly, no

useful purpose would be served by treating the plaintiffs' equitable accounting claim as an additional, and duplicative, action at law. And the district court was correct in implicitly declining to do so.

### 3. *Conversion*

The district court rejected the plaintiffs' claim for conversion on two grounds. First, as a matter of law, it concluded that title had not passed from Westwind to the plaintiffs. As we noted earlier, that determination was incorrect, and it follows that a summary judgment on the conversion claim cannot stand on that basis.

■ Second, the district court determined that the plaintiffs had not made a "demand" for the return of the equipment or for "specific, identifiable money." New York law does not, however, always require that a demand be made and be met by a refusal to make out a claim of conversion. Instead, a demand is necessary only where the property is held lawfully by the defendant. *White v. City of Mount Vernon*, —— A.D.2d ——, ——, 633 N.Y.S.2d 369, 370 (2d Dep't 1995) ("If possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property . . . ."). For example, since an innocent purchaser of stolen goods is not a wrongdoer, she is not liable in conversion unless and until she refuses the true owner's demand for a return of the property. *Lawrence v. Meloni*, 163 A.D.2d 827, 828, 558 N.Y.S.2d 360, 361 (4th Dep't 1990) (mem.op.). The reason for this rule is simply "that one in lawful possession shall not have such possession changed into an unlawful one until he 'be informed of the defect of his title and have an opportunity to deliver the property to the true owner . . . .'" *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 106, 156 N.E. 629 (1927).

■ But where the defendant holds the property unlawfully—where, for example, he stole the property—"no demand and refusal are necessary to render the defendant liable." *Nat Koslow, Inc. v. Bletterman*, 23 Misc.2d 340, 343, 197 N.Y.S.2d 583, 586 (Sup.

Ct.N.Y.Cty.1960). And "unlawfulness" need not amount to theft or misappropriation. Rather, "[i]t is sufficient if there be interference with the owner's dominion over his property to the exclusion of his rights." *Mendelson v. Boettger,* 257 A.D. 167, 169–70, 12 N.Y.S.2d 671, 673 (2d Dep't), *aff'd,* 281 N.Y. 747, 23 N.E.2d 554 (1939). Thus, exercising rights of ownership—by, for example, selling property that you know belongs to someone else—constitutes conversion.

■ It appears from the record that PacifiCorp asserts no ownership right in the computer equipment. Indeed, its only argument is that the plaintiffs are also not the owners. If it is true that PacifiCorp knows that it is not the owner, then PacifiCorp also knew that the money it collected by renting or selling the computer equipment after the initial subleases expired belonged to somebody else. It follows that PacifiCorp knew that it was unlawfully in possession of the equipment and the corresponding rent or sale proceeds. Under such circumstances, the plaintiffs are not required to issue a demand, and summary judgment against them, on these grounds, was inappropriate.

■ This does not, however, end the matter. An action for conversion can be maintained only by the true owner of the property. *Aetna Casualty & Sur. Co. v. Glass,* 75 A.D.2d 786, 786, 428 N.Y.S.2d 246, 247 (1st Dep't 1980) (mem.op.) (requiring plaintiff to demonstrate that it had "legal ownership or an immediate superior right of possession to specific identifiable personal property" in order to show a conversion). As with the breach of contract claim, there may or may not be triable issues of fact as to whether the plaintiffs are in fact the true owners of the computer equipment. But, assuming that jurisdiction exists, that is for the district court to determine on remand, after appropriate briefing and arguments by the parties.

### III. CONCLUSION

We vacate the judgment and remand the case for further proceedings on the jurisdic-tional issue, and, if jurisdiction exists, on the underlying contract and conversion claims.