Lindsay **JENKINS**, Plaintiff,

v.

**VIRGIN ATLANTIC AIRWAYS, LTD.,**
Condon & Forsyth and Thornton,
Davis & Murray, Defendants.

No. 97 CIV. 9350(JES).

United States District Court,
S.D. New York.

April 28, 1999.

Lindsay Jenkins, Palm Beach, Fl, for Plaintiff Pro se.

Christopher Carlsen, New York, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Lindsay Jenkins ("Jenkins"), appearing *pro se*, alleges that defendant Virgin Atlantic Airways, Ltd., ("Virgin Atlantic"), breached certain contractual obligations in violation of both the common law and the Uniform Commercial Code ("UCC"), and that Virgin Atlantic, Condon & Forsyth ("C & F") and Thornton, Davis & Murray ("TDM"), conspired to deny her

access to the courts in violation of her federal civil rights. Defendants move to dismiss [1] Jenkins's first amended complaint [2] ("First Am. Compl.") pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for failure to allege diversity jurisdiction, and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, or in the alternative, to transfer the action to the Southern District of Florida pursuant to 28 U.S.C. 1404(a). Jenkins opposes the motion, and also moves for sanctions. For the reasons stated below, defendants' motion to dismiss is granted, and Jenkins's motion for sanctions is denied.

## BACKGROUND

In September 1996, Jenkins, a citizen of the United Kingdom, entered into a contract with Virgin Atlantic, allegedly a corporation of unknown domicile, who is authorized to do business in New York, to purchase airline tickets for travel from Miami to Gatwick airports. *See* Second Am. Compl. at Count One ¶ 1. Jenkins complains that in course of purchasing her tickets, employees of Virgin Atlantic treated her "badly." *See id.* at Count One ¶ 2. For example, the Virgin Atlantic employees with whom she dealt incorrectly charged her credit card, forced her to sign a "bogus" indemnity agreement, threatened her with airport security, and generally engaged in harassing and abusive conduct. *See id.* at Count One ¶ 2. Thereafter, Jenkins wrote to Virgin Atlantic's Chief Executive Officer, Richard Branson, to complain about the poor treatment that she had received at the hands of Virgin Atlantic's employees. *See id.* at Ex. B. After receiving an unsatisfactory response from Branson (a rejection

---

[1]. Defendants, in the alternative, seek summary judgment pursuant to Rule 56 on the merits of Jenkins's denial of access claim.

[2]. Jenkins failed to allege the citizenship of any of the parties in her original and first amended complaint. Instead of dismissing the claims predicated on diversity outright, the Court directed Jenkins to file a second amended complaint ("Second Am. Compl.") limited to a statement of such facts as necessary to allege diversity jurisdiction. *See* Court's Order dated March 18, 1999. Since defendants' motion to dismiss was directed at plaintiff's first amended complaint, the Court deems defendants' motion to dismiss to apply to the second amended complaint as well.

of her request for complimentary round trip tickets), *see id.* at Ex. E, Jenkins instituted an action against Virgin Atlantic on December 5, 1996, in the Circuit Court of Palm Beach County (the "Florida action") for breach of contract and for a violation of the UCC. *See id.* at Count One ¶ 2.

After some preliminary motion practice in the Florida action, Jenkins brought the instant suit on December 19, 1997, and thereafter amended her complaint on May 14, 1998. That complaint essentially re-alleges the same causes of action against Virgin Atlantic that she had brought in the Florida action: namely, that Virgin Atlantic violated its common law contractual duty of good faith and fair dealing, and engaged in unconscionable conduct in violation of the UCC. *See* Second Am. Compl. at Counts One and Two. Jenkins also claims that C & F and TDM engaged in a conspiracy to "harass and delay her constitutional right of access to the Florida judicial system." *See id.* at Count Three ¶ 3. Specifically, she alleges that C & F and TDM engaged in *ex parte* communications with the state judge presiding over the Florida action. *See id.* These communications culminated in the payment of a secret check to the court clerk, allegedly in an attempt to frustrate her right to appeal from a prior adverse court order. *See id.*

On June 15, 1998, the defendants moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The defendants argue that plaintiff's claims predicated upon diversity jurisdiction should be dismissed because the complaint fails to allege the citizenship of the parties, or in the alternative, because complete diversity does not exist between the parties. Next, the defendants contend that the allegations based on denial of access to the courts are insufficient to give rise to federal question jurisdiction because plaintiff fails to allege any injury. TDM also asserts that this Court does not have personal jurisdiction over it. Finally, the defendants move, in the alternative, for an order transferring venue to the appropriate federal court in Florida pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

*Failure to Allege Diversity Jurisdiction*

■ It is well established that in order to sustain jurisdiction under 28 U.S.C § 1332, there must be complete diversity of citizenship between opposing parties, or put another way, no plaintiff may be a citizen of the same state as any defendant. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Int'l Shipping Co. S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 391 (2d Cir.1989), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). This rule also applies where aliens appear on both sides of a case. *See Int'l Shipping Co.,* 875 F.2d at 391 ("[T]he presence of aliens on two sides of a case destroys diversity jurisdiction.") (*quoting Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 790 (2d Cir.1980), *cert. denied* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981)); *D'Arboise v. Sommelier's Cellars,* 741 F.Supp. 489, 490 (S.D.N.Y.1990).

■ Additionally, a corporate defendant, for diversity purposes, is deemed to be a citizen of the state in which it is incorporated and where its principal place of business is located. *See* 28 U.S.C. § 1332(c)(1); *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101 F.3d 900, 906 (2d Cir.1996). A court, in determining a corporation's principal place of business, may examine where important policy decisions are made, or where the majority of the corporation's activities are conducted. *See Pinnacle Consultants,* 101 F.3d at 906. Moreover, allegations of citizenship, of both corporate and individual parties, must be apparent from the face of the pleadings. *See Leveraged Leasing Administration Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 47 (2d Cir.1996); *John Birch Soc'y v. National Broadcasting Co.,* 377 F.2d 194, 197 (2d Cir.1967). It is insufficient to al-

lege that a corporation merely does business in a state. Allegations as to the state of incorporation and the principal place of business must appear on the face of the complaint lest the court erroneously exercise jurisdiction where complete diversity is lacking. *See John Birch Soc'y,* 377 F.2d at 197; *Anisfeld v. Cantor Fitzgerald,* 631 F.Supp. 1461, 1468 (S.D.N.Y.1986).

Here, plaintiff alleges that she is a citizen of the United Kingdom, and that Virgin Atlantic "is a corporation of unknown domicile, authorized to do business in New York State." Second Am. Compl. at Count One ¶ 1. While the Court is mindful of plaintiff's *pro se* status,[3] her failure to allege Virgin Atlantic's place of incorporation and its principal place of business in her complaint is fatal to her allegation that the Court may exercise diversity jurisdiction. Furthermore, her contention that Virgin Atlantic is "authorized to do business in New York State" is insufficient to establish either Virgin Atlantic's place of incorporation or its principal place of business. Therefore, plaintiff's second amended complaint must be dismissed.

In any event, the Court must dismiss Jenkins complaint based upon diversity jurisdiction for another reason: plaintiff has failed to rebut, or even address, Virgin Atlantic's contention, supported by an affidavit in its motion to dismiss, that it is incorporated, and has its principal place of business, in the United Kingdom. *See* Affidavit of Christopher Carlsen ("Carlsen Aff.") dated June 15, 1998, Ex. I. Evidentially aware that this would destroy diversity jurisdiction, Jenkins instead chose to dodge the issue by stating that Virgin Atlantic is of unknown domicile. *See* Second Am. Compl. at Count One ¶ 1. However, this is insufficient to rebut Virgin Atlantic's showing that it is incorporated under the laws of England and Wales, and has its principal place of business in the

United Kingdom. *See* Carlsen Aff. at Ex. I. Likewise, plaintiff's argument that Virgin Atlantic is litigating an unrelated case in this Court has no relevance to the issue of subject matter jurisdiction in the instant matter. Accordingly, since Jenkins and Virgin Atlantic are both citizens of the United Kingdom, and are on opposite sides of the action, the Court must dismiss plaintiff's complaint.

*Failure to Allege Denial of Access to the Courts*

■ In considering a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must examine the complaint liberally, and draw all reasonable inferences in favor of the non-moving party, *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). A claim should be dismissed only if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Brass,* 987 F.2d at 150 (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct., 99, 102, 2 L.Ed.2d 80 (1957)). Moreover, *pro se* complaints must be broadly construed, and liberally read. *See DeCarlo v. Fry,* 141 F.3d 56, 62 (2d Cir.1998); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991). Finally, in determining the sufficiency of allegations raised in a complaint, the Court may rely upon "the factual allegations in the plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing the suit." *Brass,* 987 F.2d at 150; *Cortec Indus.,* 949 F.2d at 47–49.

---

3. The Court questions whether Jenkins is truly litigating this case *pro se*. In a letter attached to her various complaints it is apparent that plaintiff's fiancé is an attorney who threatened Virgin Atlantic with legal action in connection with the events at issue in the case at bar, "a course of conduct that he is keen to pursue." First Am. Compl. at Ex. B.

Here, Jenkins alleges that the "defendant law firms schemed to harass plaintiff and abuse her and obstruct, harass and delay her constitutional right of access to the Florida judicial system." Second Am. Compl. at Count Three ¶ 3. The scheme included the secret payment of plaintiff's monetary obligation in the Florida action to the court clerk, all in an effort to frustrate plaintiff's right to appeal from a prior adverse court order. *See id.* In response, defendants argue that Jenkins has failed to state a claim for denial of access to the courts under 42 U.S.C. § 1983 because she has not pled any actual injury.

 The Court agrees with the defendants that Jenkins has failed to state a claim for denial of access to the courts. In so ruling, the Court relies on documents attached to the affidavit of the defendants' attorney Christopher Carlsen which indicate that even if the allegations in plaintiff's complaint are accepted as true (as the Court must on a motion to dismiss) she suffered no actual injury as is required to state a claim for denial of access to the courts. Jenkins argues that the Court should not consider the documents offered by the defendants until after the completion of discovery. The Court disagrees. While Rule 12(b)(6) normally requires the Court to convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented," the Court, does not have to do so if it relies on documents (1) that have been incorporated by reference in the complaint; (2) of which judicial notice may be taken; or (3) of which plaintiff had knowledge of and relied upon in bringing the lawsuit. *See Brass,* 987 F.2d at 150; *Cortec Indus.,* 949 F.2d at 47–49. Here, in determining the sufficiency of plaintiff's complaint, the Court relies on motions filed by plaintiff in the Florida action, motions filed by defendants in the Florida action to which plaintiff refers to, and relies upon, in her complaint, and to orders rendered by the court in the Florida action of which this Court takes judicial notice of.

From these documents the Court is able to determine that on December 30, 1996, Virgin Atlantic moved the Florida court to transfer the case from Palm Beach County, Florida to Dade County, Florida. *See* Carlsen Aff. at Ex. C. On May 8, 1997, Virgin Atlantic's motion to transfer was granted, and after a re-hearing on the motion, the court in Palm Beach County ordered the case transferred to Dade County after Jenkins paid the appropriate transfer fee. *See id.* at Ex. D. On May 16, 1997, Jenkins filed a notice of appeal with the Palm Beach County Circuit Court, Appellate Division, seeking to appeal the order of transfer. *See id.* at Ex. E. After Jenkins failed to pay the appropriate transfer fee, *see id.* at Ex. F, on June 2, 1997, the trial judge amended her initial order *nunc pro tunc* to permit either Virgin Atlantic or Jenkins to pay the fee *See id.* at Ex. G. On June 9, 1997, TDM paid the fee and the action was transferred to the Dade County Circuit Court. *See id.* at Ex. H. Thereafter, plaintiff filed a motion to re-transfer the case back to Palm Beach County pending appeal. *See id.* at Ex. L.

Here, Jenkins alleges that "after the court entered an order imposing certain duties on plaintiff, defendant law firms sent a secret check to the Clerk of Court secretly seeking to pay plaintiff's monetary obligation for her, *as a means of frustrating her right to appeal from the prior court order."* *See* Second Am. Compl. at Count Three ¶ 3 (emphasis added). Giving this allegation a liberal construction, the only injury plaintiff could have suffered from defendants' secret scheme was the inconvenience of being forced to litigate her appeal of the trial court's transfer order in Dade County rather than in Palm Beach County (where plaintiff resides). This is not the type of "actual injury" sufficient to make out a claim for denial of access to the courts. *See Monsky v. Moraghan,* 127 F.3d 243 (2d Cir.1997).

In *Monsky,* plaintiff alleged that the defendant, a state court judge, violated her right of access to the courts by permitting

his dog to engage in offensive contact with plaintiff while she consulted materials in the court clerk's office. 127 F.3d at 244. The Second Circuit, in affirming the district court's decision to grant defendant's motion to dismiss, held that "in order to establish a violation of a right of access to the courts, a plaintiff must demonstrate that a defendant caused actual injury." *Id.* at 247 (internal quotations omitted). The Court explained that the plaintiff failed to allege that the defendant's conduct "caused any prejudice to her pending state court litigation," *id.*, and that while the plaintiff may have suffered emotional distress, embarrassment, etc., her failure to allege any actual injury could not survive a motion to dismiss. *See id.*

Similarly, plaintiff's allegation that defendants "frustrated" her right to appeal cannot overcome defendants' motion to dismiss. Plaintiff has never alleged that the defendants schemed to *deny* her an opportunity to appeal, rather she merely alleges that they attempted to "frustrate" her right to appeal. Moreover, plaintiff does not allege in either her complaint, or in her response to defendants' motion, that she suffered any prejudice from defendants' behavior in the Florida action. The mere "frustration" and inconvenience of litigating an appeal in Dade County rather than in Palm Beach County is not the type of "actual injury" that gives rise to a claim for denial of access to the courts. Therefore, plaintiff's claim must be dismissed.

In any case, even assuming that the inconvenience of having to litigate her appeal in Dade County is an "actual injury" cognizable as a claim for denial of access to the courts, plaintiff could not have suffered any injury under Florida law. In recently passing upon the issue of where an appeal from a trial court's transfer order is properly taken, the Florida Supreme Court held that

> "[a]ppellate jurisdiction is determined at the time the notice of appeal . . . is filed. If the change of venue has not yet become effective when the notice or peti-

tion is filed, appellate jurisdiction lies in the district court of appeal which serves as the appellate court for the transferor court. That district court of appeal shall retain jurisdiction of the matter before it even though the change of venue is later effected." *Vasilinda v. Lozano,* 631 So.2d 1082, 1087 (1994).

Thus, "even if the order changing venue itself is challenged, appellate jurisdiction will depend upon whether the change has been effected when the notice of appeal is filed." *Id.* at 1087, n. 4. Applying this rule to the instant case, Jenkins filed her notice of appeal challenging the trial court's transfer order on May 16, 1997. More than two weeks later, on June 2, 1997, the defendants paid the transfer fee. Since plaintiff filed her notice of appeal well before the defendants paid the fee to effect transfer, appellate jurisdiction was vested in Palm Beach County. Thus, even if the defendants intended to force plaintiff to litigate her appeal in Dade County, and thereby "frustrate" her right to appeal, they could not have succeeded because appellate jurisdiction over her appeal was already vested in Palm Beach County. This being so, plaintiff has failed to allege any conceivable basis for her claim of denial of access to the courts, and accordingly, the Court must dismiss the claim.

*Motion for Sanctions*

Plaintiff moves for sanctions against defendants for their purported failure to notify her that a hearing scheduled to be held on September 18, 1998 had been canceled. Plaintiff's motion is denied because plaintiff's failure to include her telephone number on any of her papers until after the canceled hearing precluded the Court from notifying her directly that the hearing had been canceled. *See* Rule 11(a) ("Each paper shall state the signer's address and telephone number, if any.") To the extent that plaintiff did not receive notice, such conduct is not chargeable to the defendants. Therefore, plaintiff's motion for sanctions is denied.

## CONCLUSION

For the reasons stated, the Court grants defendants' motion to dismiss plaintiff's second amended complaint with prejudice, and denies plaintiff's motion for sanctions. The Court directs the Clerk of Court to enter judgment accordingly, and close the action.

It is **SO ORDERED.**