In the Matter of JUANITA DE CARLO, Petitioner, v CESAR P. PERALES, as Commissioner of Social Services of the State of New York, et al., Respondents.

Third Department, October 15, 1987

## APPEARANCES OF COUNSEL

*Dorfman & Lynch (Lewis A. Hoffman* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Alan W. Rubenstein* of counsel), for Cesar P. Perales, respondent.

*V. Michael Liccione* for County of Oneida Department of Social Services, respondent.

## OPINION OF THE COURT

YESAWICH, JR., J.

From mid-December 1984 to mid-February 1985, in the

course of operating a family day-care home certified for up to six children, petitioner cared for a 2½-year-old girl (hereinafter the child). In July 1985, the Statewide Central Registry for Child Abuse and Maltreatment (see, Social Services Law § 422) received a report that the child had been sexually abused in petitioner's home and it forwarded the report to respondent Oneida County Department of Social Services (hereinafter OCDSS) for investigation. As part of the investigation, an experienced caseworker interviewed the child and also obtained a written statement, prepared by the child's mother, describing the child's behavior while in petitioner's care and thereafter. On August 1, 1985, OCDSS notified petitioner and her husband that they were the subjects of a child abuse investigation. OCDSS claims that it then sent a letter on October 10, 1985 informing petitioner that her day-care certification was revoked, effective November 1, 1985; petitioner asserts that the letter was not received until November 2, 1985. On October 28, 1985, OCDSS notified petitioner that sexual abuse of the child by petitioner's husband was indicated. Following a hearing, held December 9, 1985, the Administrative Law Judge (hereinafter ALJ), on behalf of respondent State Commissioner of Social Services, issued a decision sustaining revocation of petitioner's certificate to operate a family day-care home. Petitioner challenges that decision, charging that she was denied due process and that substantial evidence to support the decision is lacking.

■ Insofar as petitioner maintains that the prehearing revocation of her certificate violated her procedural due process rights, we are mindful that petitioner was entitled to a hearing prior to the revocation, absent a finding, not made here, that an individual's health, safety or welfare was in imminent danger (see, Social Services Law § 390 [12]; 18 NYCRR 417.16 [d], [e]). However, examined in context, this procedural transgression was not so detrimental to petitioner as to warrant disregarding the results of the December 9, 1985 hearing.

By her own admission on August 2, 1985, petitioner was aware that she and her husband were under investigation and, in fact, had more than a month to prepare for the hearing. Furthermore, she did not make any contemporaneous complaint about the prior revocation of her certificate nor does she allege that any specific procedural prejudice occurred as a consequence. Accordingly, we conclude that revocation of

petitioner's certificate before the December 9, 1985 hearing had no substantive impact on the quality of that hearing.

■ In a parallel argument, petitioner points out that substantive due process forbids the infringement of a property right, here the revocation of her certificate, and that substantive violations occurred in that the investigative process was initiated by an unattributed complainant whose name the ALJ was unwilling to disclose and petitioner was not accorded her right to confront and examine the child, her mother and the complainant.[1] In a proceeding involving child abuse, the charged party's interest in examining inculpatory or even exculpatory material must be balanced against the State's concern with maintaining the confidentiality of its files *(Pennsylvania v Ritchie,* 480 US —, 107 S Ct 989). As observed in *Ritchie,* the charged party's right to a fair trial can be protected by an in camera examination of the material in question *(supra).*[2] Given the ALJ's in camera review of OCDSS' files in this matter, and the fact that petitioner and her husband were then allowed access to those documents that did not indicate the source of the initial report ("the bulk of the investigatory material"), refusal to disclose complainant's identity cannot be perceived as a due process infraction.

■ Nor is there force to petitioner's claim that she had no opportunity to cross-examine the child and her mother neither of whom were present at the hearing. It is noteworthy that petitioner neither subpoenaed the child or her mother nor requested the ALJ to do so. It was only after the hearing was concluded that such a request was made. For these reasons and the added fact that the ALJ declared that the testimony would be weighed in light of its hearsay character, the ALJ quite rightly refused to reopen the hearing.

■ Lastly, we find the administrative decision to be supported by substantial evidence. It is now well established that an agency can prove its case through hearsay evidence *(see, e.g., People ex rel. Vega v Smith,* 66 NY2d 130, 139; *see also,* State Administrative Procedure Act § 306 [1]), so long as it is

---

1. Petitioner's related argument that the Child Protective Services provisions of the Social Services Law apply only to the investigation of an abused child's family is without merit *(see,* Social Services Law §§ 422, 412 [4]; *see generally,* Social Services Law § 411).

2. We note that *Ritchie* involved a criminal prosecution for sexual abuse, jeopardizing the defendant's liberty interest rather than merely a property interest. The State's interest in protecting the confidentiality of its sources appears to us to remain the same in both instances.

believable, relevant and probative *(see, Matter of Yerry v Ulster County,* 128 AD2d 941, 942). Although the crucial evidence here (the hearsay statements of the child and her mother as interpreted by knowledgeable caseworkers) is far from overwhelming, it is sufficient to support the conclusion that petitioner allowed a child in her care to be sexually abused in contravention of 18 NYCRR 417.4 (a). The evidence suggests that the child's allegation was not fabricated or imagined. Based on his interview with the child, using ana-tomically correct dolls, a caseworker, with extensive experi-ence investigating child abuse and neglect complaints, was of the opinion that the child had been sexually abused. Other evidence, including the child's assertions, implicate petition-er's husband as the likely source of that abuse.

MAIN, J. P., CASEY, WEISS and LEVINE, JJ., concur.

Determination confirmed, without costs, and petition dis-missed.