141 F.3d 56
 Juanita DeCARLO and Vito DeCarlo,
Plaintiffs-Appellees-Cross-Appellants,
v.
Stephen FRY, Administrative Law Judge and Connie Most
McLaughlin, Defendants,
Cesar A. Perales, Commissioner, New York State Department of
Social Services; Jacqueline Turner, Individually and in her
official capacity as Director of Services for the Oneida
County Department of Social Services; Dora Hendricks, Child
Protective Services Supervisor; David Kraus; Rose Mary
Blank, Individually and in her official capacity as
Supervisor of Day Care Unit; and Shirley Astle,
Individually and in her official capacity as Day Care
Supervisor, Defendants-Cross-Appellees,
Richard DuRose, in his official capacity as Commissioner of
Social Services of Oneida County,
Defendant-Appellant-Cross-Appellee.
 Docket Nos. 97-7702, 97-7704 and 97-7754.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 28, 1998.
Decided April 6, 1998.
 
 Bartle J. Gorman, Gorman, Waszkiewicz, Gorman & Schmitt, Utica, NY (Darryl B. Rahn, of counsel), for Defendant-Appellant-Cross-Appellee Richard DuRose.
 Nancy L. Pontius, MacKenzie Smith Lewis Mitchell & Hughes, LLP, Syracuse, NY, for Plaintiffs-Appellees-Cross-Appellants.
 Before: CALABRESI, CABRANES, and HEANEY, Circuit Judges.*
 CALABRESI, Circuit Judge:
 
 
 1
 Richard DuRose appeals from a judgment of the United States District Court for the Northern District of New York (David N. Hurd, Magistrate Judge ) entered against him in his official capacity as Commissioner of Social Services for Oneida County, New York. The plaintiffs, Juanita and Vito DeCarlo, sued DuRose and other employees of the Oneida County Department of Social Services ("OCDSS") under 42 U.S.C. § 1983, alleging that their constitutional rights had been violated by the Department's actions in relation to Mrs. DeCarlo's certification as a home day care provider. After a jury trial, Magistrate Judge Hurd issued a verdict as a matter of law against DuRose and the jury returned a damage award of $300,000. In addition, the court awarded the plaintiffs $70,324.47 in costs and attorney's fees pursuant to 42 U.S.C. § 1988. DuRose appealed, and the DeCarlos cross-appealed with respect to issues raised by their claims against DuRose and other OCDSS employees in their official and personal capacities.
 
 
 2
 Mrs. DeCarlo's license was revoked in 1985 as a result of charges that her husband, Vito DeCarlo, had sexually abused a child in Mrs. DeCarlo's care. In February 1985, Connie Most called the county and alleged that Mr. DeCarlo had abused her two and a half year-old daughter, Tara, while she was in Mrs. DeCarlo's home. After an investigation, which the plaintiffs allege was inadequate and conducted in bad faith, the OCDSS made a finding that child abuse was "indicated" in the case. Shortly thereafter, Mrs. DeCarlo's day care certification was revoked. A state administrative law judge, Stephen Fry, upheld the revocation in a decision dated April 6, 1986. The DeCarlos' attorney sought to have the "indicated" finding expunged from their record during this hearing, but Judge Fry refused to expand the scope of the hearing beyond the propriety of the licensure revocation. The DeCarlos initiated an Article 78 proceeding in New York state court to challenge Judge Fry's decision on the license revocation.
 
 
 3
 Collateral to these proceedings, the DeCarlos continued to seek to have the underlying "indicated" finding expunged through administrative channels. The New York State Department of Social Services expunged the finding as to Mrs. DeCarlo on May 11, 1987, concluding that there was "no credible evidence to determine Mrs. Juanita De Carlo as a perpetrator in the sexual abuse or maltreatment of the child Tara Most." However, the Department refused to expunge Mr. DeCarlo's record, and Mrs. DeCarlo was still listed in the state's registry as a member of a household where sexual abuse occurred. Meanwhile, the New York State Supreme Court, Appellate Division, affirmed Judge Fry's decision on the license revocation in a published opinion on October 15, 1987. See DeCarlo v. Perales, 131 A.D.2d 31, 520 N.Y.S.2d 267 (N.Y.App.Div.3d Dep't 1987).
 
 
 4
 On October 26, 1987, Mr. DeCarlo received an administrative fair hearing before Judge Fry on his expungement request. In conjunction with this hearing, the DeCarlos and their accuser, Connie Most, took lie detector tests, the results of which were favorable to the DeCarlos and unfavorable to Most. In addition, the DeCarlos submitted evidence of psychological testing that had been done on Mr. DeCarlo which indicated that he had no tendency to be sexually attracted to children. On September 14, 1988, Judge Fry issued a decision expunging the "indicated" finding with respect to Mr. DeCarlo, concluding that there was no "credible evidence" of abuse.
 
 
 5
 Soon after, in October 1988, Mrs. DeCarlo wrote to Commissioner DuRose, expressing her desire to have her day care license reinstated. Thereafter, she submitted an application for reinstatement. The application was complete by February 1989. State regulations require that the county complete an investigation within seventy-five days of the receipt of a valid application, see N.Y. Comp.Codes R. & Regs. tit. 18, § 417.2(e) (1988), and that a notice of approval or denial of the application be issued within thirty days of the completion of the investigation, see id. § 417.2(f). If an application is denied, the applicant then has a right to an administrative fair hearing. See N.Y. Soc. Servs. Law § 390(10) (McKinney 1992) (stating that "when an application for such license is denied or registration rejected, the applicant for or holder of such registration or license is entitled ... to a hearing before the department.").
 
 
 6
 The OCDSS did not act on Mrs. DeCarlo's application within the time period allowed by law. The application first went to Shirley Astle, who testified that she did not recall ever having been instructed concerning the time limits applicable to requests for recertification. Confused by the seeming conflict between the published Appellate Division decision and the subsequent administrative expungement of the charges against the DeCarlos, Astle was not sure whether Mrs. DeCarlo was entitled to get her license back. She, therefore, neither approved nor denied Mrs. DeCarlo's application and sought advice from her supervisor, Rose Mary Blank. Blank, in turn, spoke to her supervisor, Jacqueline Turner. Turner and Blank did not consult DuRose, who was technically Turner's immediate supervisor. Instead, they asked the opinion of the Regional Director of the Office of Family and Children Services of the New York State Department of Social Services, Jack Klump. Klump advised Turner that the decision on the application was up to the county, not the state, and that the county was required to make a decision. Nevertheless, no one ever took action on DeCarlo's application. The application simply remained in "limbo." And since the application had not been formally denied, DeCarlo was unable to seek a fair hearing on whether the grounds for denial were proper.
 
 
 7
 On March 15, 1989, the DeCarlos filed a pro se complaint against Administrative Law Judge Stephen Fry, Connie Most (the mother who had filed the charges against them), New York State Commissioner of Social Services Cesar A. Perales, and OCDSS Commissioner Richard DuRose, as well as two other OCDSS employees, Dora Hendricks and David Kraus, who the plaintiffs alleged were involved in the original investigation of the charges and revocation of Mrs. DeCarlo's license. This complaint alleged that the DeCarlos' rights had been violated by the initial proceedings that had resulted in the "indicated" finding and in the revocation of Mrs. DeCarlo's license. It did not allege any violations of Mrs. DeCarlo's rights arising out of OCDSS' subsequent failure, post-expungement, to reinstate that license. The United States District Court for the Northern District of New York (Howard G. Munson, Judge ), dismissed the claims against Fry and Most as frivolous. Subsequently, the court (Con G. Cholakis, Judge ) dismissed the complaint against Hendricks and Kraus entirely and against DuRose and Perales in their individual capacities. The court ordered the appointment of pro bono counsel, and the complaint was amended to include claims by Mrs. DeCarlo against DuRose, in his official and individual capacity, relating to OCDSS' post-expungement delay in acting on the application for reinstatement. The amended complaint also added Turner, Blank, and Astle as defendants on these post-expungement claims. Subsequently, Judge Cholakis granted summary judgment to Blank and Astle on the grounds of qualified immunity. He denied DuRose's motion for summary judgment.
 
 
 8
 A jury trial on Mrs. DeCarlo's official capacity claims against DuRose and on both the official and personal capacity claims against Turner was held before Magistrate Judge Hurd. A bench trial of the DeCarlos' claims against Perales was conducted concurrently. At the conclusion of the evidence, Judge Hurd ordered a verdict, as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a) against DuRose in his official capacity. The jury returned a verdict in favor of Turner on the claims against her in her personal capacity, finding that she had not acted intentionally or recklessly in "fail[ing] to provide Juanita De Carlo with the process which was due relating to recertification of her day care facility." The verdict form did not ask the jury to rule on the official capacity claims against Turner. In addition, the court entered a declaratory judgment against Perales in his official capacity, from which no appeal was taken. The court denied post-trial motions by Perales and DuRose, see DeCarlo v. Perales, 963 F.Supp. 175 (N.D.N.Y.1997). DuRose filed a timely appeal, and the DeCarlos filed a cross-appeal.
 
 I. Discussion
 
 9
 A. Verdict as a Matter of Law Against DuRose in His Official Capacity
 
 
 10
 On appeal, DuRose contends that the District Court erred in issuing a verdict as a matter of law against him. We agree. We review the decision to grant a such a verdict de novo. See, e.g., Gardiner v. Incorporated Village of Endicott, 50 F.3d 151, 155 (2d Cir.1995). Magistrate Judge Hurd's verdict was apparently based on his belief that Judge Cholakis had already ruled on DuRose's liability, and that this ruling constituted the "law of the case." He stated that
 
 
 11
 [w]ith regards to the Plaintiffs' [directed verdict] motion against the Defendant DuRose, the Court notes that he was sued in his official capacity only and that, therefore, there would be a same standard as if it was an action against the County of Oneida and its subdivision, the Department of Social Services. With regard to Judge Cholakis's decision of January 19, 1990 order, which was in regard to a decision he made from the bench on November 3, 1989, in which he states this Court finds that the commissioner's, and he was referring to Commissioner DuRose, continuing failure to grant the DeCarlos a day care certificate following the expungement of the Central Register and the implied vindication of Mr. DeCarlo's name constitutes a due process violation. This is the law of the case which this Court is bound to follow and will do so.
 
 
 12
 Judge Hurd was apparently referring to Judge Cholakis' decision denying DuRose's motion for summary judgment. At no time, however, did Judge Cholakis enter judgment as a matter of law against DuRose. Thus, quite apart from the question of whether the doctrine of the "law of the case" would apply in this situation, the fact of the matter is that Judge Hurd misunderstood what Judge Cholakis had held. He therefore improperly relied on Judge Cholakis' earlier decision denying DuRose's summary judgment motion and used that decision to avoid reaching the merits of the plaintiff's motion for a verdict as a matter of law against DuRose.
 
 
 13
 On appeal, DuRose asks us to dismiss the plaintiffs' suit in its entirety. We believe, however, that it is more appropriate to allow the district court, which is familiar with the evidence presented at trial, to determine in the first instance whether there remain genuine issues of material fact as to the liability of DuRose in his official capacity as Commissioner of OCDSS.[1] We note that this suit, since it is brought against DuRose in his official capacity, is equivalent to a suit against OCDSS and Oneida County. See Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3104-05, 87 L.Ed.2d 114 (1985). Thus, a verdict, as a matter of law, against DuRose in this suit would be appropriate only if the facts are such that any reasonable jury would have had to return a verdict against the Department. And a municipality may be not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of respondeat superior. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).
 
 
 14
 In order to establish municipal liability, "a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir.1991); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 478-81, 106 S.Ct. 1292, 1297-99, 89 L.Ed.2d 452 (1986). Although this rule "does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti, 941 F.2d at 123 (citations omitted). "The inference that a policy existed may, however, be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges" that its agents were violating citizens' constitutional rights. Id. (citations omitted).[2]
 
 
 15
 Having considered the applicable legal standards, the district court may conclude that its initial judgment was correct. If, however, the court finds that a verdict, as a matter of law, against DuRose is not proper because there are genuine issues of fact to be resolved by the jury, a new trial will be necessary. Finally, the court might decide that a verdict, as a matter of law, in favor of DuRose would be appropriate.
 
 
 16
 We remand the matter to the district court so that it might make these evaluations in the first instance, and we express no opinion as to which of these outcomes is correct. We note that there is a serious question as to whether the record before us would permit municipal liability to lie against DuRose, acting in his official capacity on behalf of OCDSS. By remanding with instructions that the district court reexamine this issue, we do not suggest otherwise or in any way alter the law of municipal liability under § 1983. We emphasize that on remand, should the district court again enter judgment as a matter of law for plaintiffs, it will need to state clearly the basis for a finding of municipal liability in the circumstances presented.
 
 
 17
 Because we are remanding for a fresh determination on the issue of liability, we need not reach the defendant's arguments as to the size of damages and attorney's fees awarded.
 
 
 18
 B. Cross-Appeal on Verdict in Favor of Jacqueline Turner
 
 
 19
 With respect to the Mrs. DeCarlo's cross-appeal, we find no merit in her contention that the verdict in favor of Jacqueline Turner in her personal capacity should be set aside. We may reverse the verdict only if we conclude that no reasonable jury could have reached this conclusion. See, e.g., Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir.1997). Based on the evidence presented, a reasonable jury could have found that Turner did not act intentionally or with reckless indifference to deprive Mrs. DeCarlo of her constitutional rights. Accordingly, we reject Mrs. DeCarlo's cross-appeal on this issue.
 
 C. Dismissal of Pre-Expungement Claims
 
 20
 The plaintiffs also argue that Judge Cholakis erred in dismissing their initial pro se claims against Hendricks, Kraus, and DuRose with respect (a) to the initial revocation of Mrs. DeCarlo's license and (b) to the entering of the "indicated" finding of sexual abuse.[3] They further contend that they should have been allowed to amend their complaint to clarify that they were making a substantive due process claim against these defendants. We find that the court properly dismissed these claims as stated in the original complaint, but that the plaintiffs should have been given leave to amend their complaint at least once. Dismissal of the pre-expungement claims at the Rule 12(b)(6) stage, or at summary judgment, might ultimately have been entirely appropriate. But the plaintiffs should have had at least one further opportunity to state these claims as best they could, especially after the appointment of pro bono counsel. See, e.g., Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991) ("A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (citation omitted). Therefore, on remand, the plaintiffs should be allowed to amend their complaint to include claims arising out of the above-mentioned county officials' actions before expungement. We, of course, express no opinion as to whether any of these claims might have merit.D. Claims Against DuRose in His Personal Capacity
 
 
 21
 In addition, Mrs. DeCarlo contends that it was error to dismiss the claims against DuRose in his individual capacity with respect to the post-expungement claims. On the record before us, it is unclear whether these claims were dismissed under Rule 12(b)(6) or on summary judgment, or indeed, if they were ever officially dismissed at all or just got lost in the shuffle. In a November 3, 1989, decision from the bench, which was subsequently memorialized in a written order on January 13, 1990, Judge Cholakis dismissed the claims brought against DuRose in his personal capacity in the original complaint, but these were all pre-expungement claims. The record does not reveal precisely how and why the court disposed of the claims against DuRose in his personal capacity (claims that arose out of the OCDSS' actions post-expungement) that were added in the amended complaint filed on August 19, 1991.[4] If the court dismissed these claims under Rule 12(b)(6), that was wrong, because it was not impossible for the plaintiff to adduce facts showing that DuRose was liable in his individual capacity. If they were dismissed at summary judgment, that may or may not have been proper. And if they were never formally dismissed at all, the district court must resolve the issue one way or the other before we can act. Accordingly, we remand this issue for clarification.
 
 E. Qualified Immunity of Astle and Blank
 
 22
 Finally, the plaintiffs argue that the district court erred in granting summary judgment to defendants Astle and Blank on the grounds of qualified immunity. The court based this decision on the fact that "Astle and Blank did nothing which is outside the realm of what a reasonable person in their circumstances would do: they sought advice from a superior." We see no error in this judgment, and on this issue affirm the district court.
 
 
 23
 * * *
 
 
 24
 The judgment of court below is VACATED in part. The case is REMANDED to the district court for consideration of whether, in light of the governing legal standards as described above: (a) the judgment against defendant DuRose in his official capacity was proper; (b) a judgment in his favor would be proper; or (c) a jury trial would be required. On remand, the plaintiffs shall be given leave to amend their complaint to amplify their pre-expungement claims. And the court shall specify whether it dismissed the claims against defendant DuRose, in his personal capacity, with respect to the post-expungement claims. If it did, it shall give its reasons for doing so. If it did not, it shall rule on the defendant's motion to dismiss these claims. The court's decision granting summary judgment to defendants Astle and Blank is AFFIRMED. And the judgment on the jury verdict in favor of defendant Turner is likewise AFFIRMED.
 
 
 
 *
 The Honorable Gerald W. Heaney, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The fact that Judge Cholakis held prior to trial that genuine issues of material fact precluded summary judgment as to DuRose's liability does not necessarily mean that a verdict as a matter of law after the trial would be unwarranted. The way the evidence plays out at trial may sufficiently alter the contours of the liability issue such that a reasonable jury could reach only one conclusion
 
 
 [2]
 In addition, we note that DuRose also claims that Mrs. DeCarlo was not denied due process of law because she could have sought relief in an Article 78 proceeding in state court. We express no opinion as to the merits of this argument
 
 
 [3]
 While only Mrs. DeCarlo raised claims with regard to the events that occurred postexpungement, both Mr. and Mrs. DeCarlo claimed that the defendants' actions pre-expungement violated their rights
 
 
 [4]
 By letter dated December 15, 1994, Judge Cholakis indicated to the parties that all of the claims against DuRose in his personal capacity had been dismissed in the January 13, 1990 order. But the court's decision in 1990 cannot logically have disposed of claims added in 1991. And an informal letter to the parties indicating that certain claims previously had been dismissed lacks the force of a formal court order officially dismissing those claims