Sean HIGGINS; Mark Paton; and Reuben Knoblauch, Plaintiffs,

v.

CITY OF JOHNSTOWN, NEW YORK; James L. Cook, Individually, and in his official capacity as Chief of Police; and Jack Papa, Individually, and in his official capacity as a member of the Johnstown City Council and Chairman of the Johnstown Public Safety Committee, Defendants.

No. 96–CV–1732.

United States District Court, N.D. New York.

Sept. 17, 1998.

Bohl, Della Rocca & Dorfman, P.C., Albany, NY, for plaintiffs.

Carter, Conboy, Case, Blackmore, Napierski & Maloney, P.C., Albany, NY, for defen-

dants, James A. Resila, James B. Tuttle, of counsel.

## MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiffs, all police officers for the City of Johnstown, New York, sued the defendants pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of their rights under the First Amendment, Equal Protection Clause, and Substantive Due Process Clause of the United States and New York State Constitutions, as well as intentional infliction of emotional distress. The defendants have moved for summary judgment seeking dismissal of the plaintiffs' complaint on the merits and with prejudice. The plaintiffs oppose the motion. Oral argument was heard on July 29, 1998, in Albany, New York. Decision was reserved.

### II. FACTS

In September 1995, a promotional civil service test was scheduled to be given for the position of Lieutenant in the Johnstown Police Department. Plaintiffs Sean Higgins ("Higgins") and Mark Paton ("Paton") were both eligible to take the examination.

Higgins alleges that during the months of July and August 1995, he was approached by Officer David Goodwin ("Goodwin"), who told him if he did not take the examination in September, he would be promoted to the next open Investigator's position within the department. In the next several weeks, Higgins had further conversations with Goodwin, Sergeant Greg Horning ("Horning"), and defendant Chief James Cook ("Chief Cook") in which the offer was confirmed but not put in writing. There was no confirmation as to when the promotion would take effect and there was no opening for an Investigator within the department at the time. With the assistance of the Fulton County Sheriff's Department and the consent of the District Attorney, Higgins wore a body wire and went to defendant Jack Papa's ("Papa") place of business to speak about the offer. Papa was a member of the Johnstown City Counsel. Papa told Higgins that he would go along with whatever deal was set up.[1] Higgins signed up to take the examination and was never asked to remove his name from the list. He also admitted that he had always intended to take the examination.

Higgins further claims that the defendants attempted to interfere with his ability to take the examination by denying his request for the day off to take the test. In his deposition, he testified that his shift on the day of the examination was 6:00 a.m. to 2:00 p.m. The exam was scheduled to take place in the morning. Higgins claims he reported for duty that day and went to take the exam in uniform and with a pager and radio. However, the work schedule for September 1995 indicates that Higgins was not scheduled to work the day of the exam. Higgins did, in fact, take the examination, but he failed to score within the top three which is required to qualify for promotion.

Paton alleges that the defendants attempted to prevent him from taking the Lieutenant's examination by offering him the next open Sergeant's position within the department. Paton had already signed up for the exam when this offer was made. Goodwin advised Paton that if he took the test, he would be "black-balled by the council." (Paton Depo. at 9.) Paton claims that Goodwin further advised him that he should not take the test because Horning was the provisional Lieutenant at the time and would probably get the job if he finished in the top three on the examination. Goodwin also suggested that Paton speak to Chief Cook about a promotion in exchange for not taking the Lieutenant's exam. He never did. Paton took the exam anyway and ranked sixth, thereby not qualifying for promotion.

Higgins and Paton claim that these offers were made to them in order to ensure that Horning, the defendants' preferred candidate, would finish in the top three on the test and therefore qualify for appointment to the Lieutenant's position.

---

1. No charges were brought before a grand jury because the District Attorney did not believe there was sufficient evidence.

Plaintiff Reuben Knoblauch ("Knoblauch") claims that Goodwin approached him and offered to promote him provisionally to a Sergeant's position if he would give a written statement detrimental to Officer Kevin Quinn ("Quinn"), a Sergeant in the department who was openly critical of the City administration. Knoblauch claims that Goodwin told him that giving the written statement would help his chances of getting a promotion. Knoblauch initially refused, but claims he later relented as a result of unspecified pressure and intimidation by the defendants. Goodwin told Knoblauch to speak to Chief Cook about the promotion, which he did. Chief Cook said he was recommending Knoblauch for a promotion, but no statements or inferences were made that the promotion was in exchange for Knoblauch making a written statement against Quinn.

In this action, Higgins and Paton allege that the defendants' false promises and intimidation violated their rights to take the Lieutenant's exam, which is protected under the First and Fourteenth Amendments of the United States Constitution as well as Article 1 §§ 8 and 9 of the New York Constitution. They also claim that the defendants acted in concert to deprive them of their rights to Equal Protection under the Fourteenth Amendment, and Article 1 § 11 of the New York Constitution. Third, Higgins and Paton assert that the defendants' attempts to manipulate the civil service system constituted an abuse of power violative of the Substantive Due Process Clause of the Fourteenth Amendment. Knoblauch alleges that his First Amendment, Equal Protection, and Substantive Due Process rights were violated when the defendants coerced him to give a false statement against Quinn. Finally, all the plaintiffs assert that the defendants' conduct constitutes intentional infliction of emotional distress under New York law.

The plaintiffs moved to consolidate this case with an action brought by Quinn which was pending before then District Judge Rosemary S. Pooler[2] and involved the same defendants (*Quinn v. City of Johnstown*, 96–

CV–136). An order was issued reserving decision pending Judge Pooler's decision on the defendants' motion for summary judgment in the *Quinn* action. Judge Pooler granted the motion for summary judgment in the *Quinn* case on April 15, 1998, and that complaint was dismissed. *Quinn v. City of Johnstown*, 1998 WL 187404 (N.D.N.Y. April 15, 1998). Therefore, the consolidation motion is moot.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed .R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

---

2. Judge Pooler has recently been appointed as a Circuit Judge for the United States Court of Appeals for the Second Circuit.

### B. *Timeliness of Defendants' Motion for Summary Judgment*

■ Plaintiffs argue that the defendants' motion for summary judgment is untimely because the defendants failed to serve the motion at least 35 days prior to the motion filing deadline as set forth in the pretrial scheduling order. The pretrial scheduling order mandated that all dispositive motions be filed on or before February 1, 1998. This was the deadline for filing the entire motion. In order to meet this deadline, under Local Rule 7.1, the pretrial scheduling order required all dispositive motions be served at least 35 days prior to the filing deadline. The plaintiffs assert this means that the defendants' motion should have been served upon them by December 28, 1997. However, the defendants served the motion on January 7, 1998, only 25 days prior to the filing deadline.

The 35 day advance service allows 21 days for the opposition to respond to the motion as *required* by Local Rule 7.1(b)(1)(B), and 14 days for the movant to submit reply papers, as *permitted* by Local Rule 7.1(b)(1)(C). By serving the motion 25 days before the filing deadline, the plaintiffs were afforded the full 21 days allowed by the rules to serve opposition papers. Therefore, they were not prejudiced by the defendants' failure to timely serve. The defendants had, however, foregone the opportunity to submit reply papers.

### C. *Personal Involvement*

■ Defendants contend that the plaintiffs' § 1983 claims must be dismissed because the plaintiffs fail to demonstrate that the defendants were personally involved in the action of which they complain. It is well established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted). The court in *Colon* stated that:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to

remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [parties] by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* (quoting *Williams v. Smith,* 781 F.2d 319, 324–325 (2d Cir.1986)).

In the present case, Higgins claims that he spoke with both Chief Cook and Papa regarding Goodwin's alleged offers of promotion if Higgins refrained from taking the Lieutenant's exam, and that both men confirmed the validity of the offers. Consequently, issues of fact exist with respect to the personal involvement of both of these defendants.

■ Paton and Knoblauch, conversely, offer no evidence indicating that Chief Cook or Papa directed Goodwin's actions, were informed of the offers, created an unconstitutional policy or custom, were grossly negligent in supervising subordinates, or exhibited *deliberate indifference to the rights of the plaintiffs.* The numerous deposition pages cited by plaintiffs do not support an inference that Chief Cook or Papa were personally involved in Goodwin's actions with respect to Paton or Knoblauch. In his deposition, Goodwin testified that neither Chief Cook nor Papa directed him to try to persuade Paton not to take the examination. The parties do not dispute that neither Paton nor Knoblauch ever spoke with Chief Cook or Papa about the purported offers and threats made. Since no evidence of personal involvement has been demonstrated with respect to the claims made by Paton and Knoblauch, their causes of action against Chief Cook and Papa must be dismissed.

### D. *Municipal Liability*

■ Defendants next argue that plaintiffs' § 1983 claims against the City of Johnstown must be dismissed because plaintiffs fail to

present facts demonstrating municipal liability. "In order to establish municipal liability, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) (citations omitted). The court in *DeCarlo* proceeds to explain that:

> Although this rule does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy. The inference that a policy existed may, however, be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights.

*Id.* at 61–62 (citations omitted) (internal quotations omitted).

In the present case, plaintiffs argue that a municipal policy is attributable to the City because of the personal involvement of municipal policy makers, Chief Cook and Papa. The plaintiffs contend that the City had a policy or practice of attempting to manipulate the civil service system in order to enable officials to promote whomever they wanted. However, there is no showing that such a municipal policy or custom existed with respect to the claims asserted by Paton and Knoblauch. Consequently, Paton and Knoblauch's claims against the City of Johnstown must be dismissed. Higgins' claims against the City should not be dismissed for failure to assert facts showing municipal liability because an issue of fact does exist as to whether the personal involvement of Chief Cook and Papa gave rise to an unconstitutional municipal custom or policy.

Since Paton and Knoblauch have failed to create an issue of fact against any defendant, the remainder of this opinion addresses solely the causes of action asserted by Higgins.

### E. *First Amendment Claim*

█ Defendants maintain that Higgins' First Amendment claim should be dismissed because he failed to establish that they engaged in conduct protected under the First Amendment. "To prevail on a First Amendment claim under 42 U.S.C. § 1983, plaintiffs must establish that (1) their 'conduct is deserving of First Amendment protection' and (2) the defendant's conduct was motivated by or substantially caused by [plaintiff's] exercise of free speech." *Hankard v. Town of Avon,* 126 F.3d 418, 421–422 (2d Cir.1997) (quoting *Rattner v. Netburn,* 930 F.2d 204, 208 (2d Cir.1991)).

█ Higgins argues that he had a property interest in having employment decisions made in accordance with New York State Civil Service Law. He argues that the act of signing up to take the civil service exam was the exercise of a property interest and was protected by the First Amendment as symbolic speech. This argument is unpersuasive. First, plaintiff points to no authority for the proposition that the New York State Civil Service Law creates a property interest actionable under the First Amendment.[3] Second, plaintiff provides no authority for the proposition that signing up to take a civil service exam is protected symbolic speech. Instead, the plaintiff skips to the second question of whether the defendants' conduct was motivated by plaintiff's actions. Since Higgins fails to show that he engaged in protected symbolic speech, the defendants' motivation for their actions does not need to be addressed. Therefore, Higgins' cause of action under the First Amendment must be dismissed in its entirety.[4]

---

3. The plaintiff argues that his right to take the civil service examination is protected by the First Amendment. However, the case law cited by the plaintiff addresses the due process issue.

4. No municipal liability exists here because the plaintiff has failed to assert an underlying constitutional injury. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).

## F. *Equal Protection*

■ Defendants next argue that Higgins' Equal Protection claim must be dismissed because Higgins has failed to produce evidence indicating that he was singled out for selective treatment because of an impermissible motive. Higgins alleges that defendants deprived him of Equal Protection by attempting to get rid of "a faction of troublemakers in the Department," of which Quinn was a member. (Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. at 7.) Higgins alleges that in attempting to rid the police department of Quinn and to ensure that Horning was promoted, defendants violated the Constitutional rights of the plaintiffs.

The Second Circuit has held that:

A violation of equal protection by selective enforcement arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996); *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir.1994). Higgins' claims fail to adequately assert either of these factors. First, Higgins does not allege that similarly situated persons have been treated differently. Second, he fails to present facts upon which to conclude that defendants' actions toward him were based on impermissible considerations, such as race, religion or intent to inhibit constitutional rights. The portions of the record cited by Higgins in support of his claim of impermissible motive fail to support his claim because they address actions taken toward Quinn, not towards Higgins himself. Higgins cannot assert Quinn's constitutional rights, only his own. Since Higgins has failed to satisfy the two requirements stated in *Crowley*, 76 F.3d at 52, his Equal Protection claim is insufficient as a matter of law. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir.1994). Since there is no viable underlying Equal Protection claim, the cause of action against the City must also be dismissed for failure to assert municipal liability.

## G. *Substantive Due Process*

■ Higgins alleges that the defendants' attempts to manipulate the civil service system constituted an abuse of power violative of the plaintiffs' rights to Substantive Due Process. Defendants argue that this cause of action must be dismissed because the Substantive Due Process Clause applies to matters relating to marriage, family, procreation, and bodily integrity, none of which applies here. In light of the Supreme Court's admonition against expanding the protections of the substantive due process clause, *see Albright v. Oliver*, 510 U.S. 266, 287, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), defendants contend that this cause of action should be dismissed. Plaintiffs argue, without any case law to support the contention, that the raw abuse of power demonstrated by defendants impinged upon the rights of the plaintiffs.

■ In the present case, no authority has been provided by counsel, nor has any been found for expanding the scope of the Substantive Due Process Clause protections to cover the facts of this case. Even assuming the existence of a property right under the New York Civil Service Law, not every such right is entitled to the protection of Substantive Due Process. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, . . . substantive due process rights are created only by the Constitution." *Id.* Furthermore, "[i]t is well settled that, where the alleged right . . . cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental, notions of substantive due process will not apply." *Local 342 v. Town Board*, 31 F.3d 1191, 1196 (2d Cir.1994) (citations omitted)(internal quotations omitted). "Substantive due process protects only those interests that are implicit in the concept of ordered liberty." *Id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). The state law property right asserted by Higgins in this case is not one of the

rights traditionally viewed as implicitly protected by the Constitution. Consequently, Higgins' substantive due process cause of action must be dismissed.

### H. *Intentional Infliction of Emotional Distress*

Defendants argue that this cause of action should be dismissed because the plaintiffs failed to file a Notice of Claim as required under New York General Municipal § Law 50–e. Plaintiffs did not oppose dismissal of this cause of action, nor did they present evidence that they filed the required Notice of Claim. Therefore, this cause of action must also be dismissed.

Therefore, it is

ORDERED that

1. Plaintiffs' motion for consolidation is DENIED as moot;

2. Defendants' motion for summary judgment is GRANTED; and

3. The Clerk is directed to enter judgment dismissing the complaint.

IT IS SO ORDERED.