Robin DEAN, Plaintiff,

v.

NEW YORK CITY TRANSIT
AUTHORITY, Defendants.

Robin Dean, Plaintiff,

v.

New York City Transit Authority, AGM
Ethridge and Superintendent
Ronan, Defendants.

Nos. CV–03–1455 (FB)(LB),
CV–03–2194 (FB)(LB).

United States District Court,
E.D. New York.

Jan. 26, 2004.

Robin Dean, Pro Se, Amityville, NY, for Plaintiff.

Martin B. Schnabel, Esq., General Counsel, by Francine E. Menaker, Esq., New York City Transit Authority, Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

These actions are consolidated for the purposes of this Memorandum and Order. In *Dean I*, defendant New York City Transit Authority ("TA") moves to dismiss plaintiff's Title VII claim as time-barred. In *Dean II*, the individual defendants move to dismiss plaintiff's Title VII claims. Alternatively, if these claims be construed as brought under § 1983, defendants move to dismiss for failure to state a cognizable claim against the Transit Authority in *Dean I* and against the individual defendants in *Dean II*.

## I. *Dean I*

Dean, currently employed by the TA, brings a Title VII gender discrimination claim against the TA concerning alleged discriminatory acts that occurred between December 2000 and July 2001. Specifically, Dean alleges, in her EEOC charge,[1] that she received disparate treatment by the Transit Authority because of her gender when she was:

> [T]ransferred ... in November of 2000[,] ... denied [her] pick rights in December 2000[,] ... given incomplete training ... [whereas] men were being trained [and] received a schedule for training[,] ... [h]er seniority was denied[,] ... [her supervisor Mrs. O'Blenis] made negative comments about her job performance[,] and [she] was disciplined ... for a late pull-out [whereas] Mrs. O'Blenis never disciplined the male dispatcher for late pull-outs.

Compl. Ex. at 12–13.[2] Furthermore, Dean alleges that three other women "up for promotion ... had to fight for their rights to be promoted" and filed charges with the EEOC. *Id.* at 14. At some point in time, her supervisor stated that "she was not going to have a repeat of what [another employee did] in regards to suing and writing letters ... [and she stated] that she was going to 'nip this letter writing shit in the bud.'" *Id.*

The TA moves to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), Dean's Title VII claim because Dean filed this action more than 90 days after her receipt of the Equal Employment Opportunity Commission's ("EEOC") right-to-sue notice. In a *pro se* letter, Dean asks the Court to deny TA's motion because she states a § 1983 claim. In response, the TA contends that Dean's allegations "do not suffice to allege [a] cause[ ] of action under § 1983." Transit Authority Reply Letter, dated December 23, 2003, at 2.

## A. Title VII

 "A claim under Title VII ... must be filed within 90 days of the claimant's receipt of a right-to-sue letter." *Sherlock v. Montefiore Medical Center,* 84 F.3d 522, 525 (2d Cir.1996). Dean alleges that she never received a right-to-sue letter, *see* Compl. at 5; however, attached to the complaint is a letter from the EEOC, dated January 24, 2002, explaining its denial of her claim. It states that the "Notice of Right to Sue is enclosed" and informs Dean that she could initiate a suit in federal court within 90 days. Compl. Ex. at 3–4. Thereafter, Dean requested recon-

---

**1.** In the facts section of Dean's *pro se* complaint she states "See Attached." Among the documents attached is a copy of a letter submitted to the EEOC explaining the facts underlying her charge.

**2.** The documents attached to the complaint are not marked as exhibits or paginated. For ease of reference, the Court will treat each page attached to the complaint as sequentially paginated and refer to them collectively as "Compl. Ex.".

sideration of the dismissal; in an EEOC letter, dated March 7, 2002, also attached to the complaint, her request was denied and she was once again informed of her right to file a lawsuit "within 90 days of [her] receipt of the Dismissal and Notice of Rights issued on January· 24, 2002." Compl. Ex. at 9.

█ Although the Court must "accept as true all the factual allegations in the complaint," *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.* 102 F.3d 660, 661 (2d Cir.1996), it can also rely upon "documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Id.* Despite Dean's allegation that she never received a right-to-sue letter, the letters attached to the complaint and Dean's request for reconsideration clearly establish that she had knowledge of the EEOC's denial of her claim and her right to initiate a lawsuit. Because Dean had notice of her right to sue and did not file this action until March 19, 2003, well after the requisite 90–day period—whether measured from the January 24, 2002 letter or the March 7, 2002 letter—her Title VII claim is dismissed as time-barred.

**B. § 1983**

█ When a gender discrimination claim is brought against a state actor, Title VII and § 1983 overlap. The Second Circuit has repeatedly held that Title VII is not the "exclusive remedy for employment discrimination claims against state or municipal employers," *Annis v. County of Westchester,* 36 F.3d 251, 254 (2d Cir. 1994). Section 1983 "furnishes a cause of action [against a state actor] for the violation of federal rights created by the Constitution" or federal statutory rights. *Id.* Under the Equal Protection Clause, "individuals have a constitutional right . . . to be free from sex discrimination in public employment," *id.;* thus, an "employment discrimination plaintiff alleging the violation of a constitutional right may bring suit under § 1983 alone," or in conjunction with a Title VII claim, if it is brought against a state actor. *Id.* at 255. Employment discrimination claims brought under Title VII and § 1983 are both analyzed under "the burden-shifting framework of Title VII claims." *Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998). Title VII and § 1983 diverge in that a Title VII claim can be based upon *respondeat superior* liability, whereas a § 1983 claim cannot. *See Gierlinger v. New York State Police,* 15 F.3d 32, 33 (2d Cir.1994) ("a Title VII sex discrimination claim . . . carries *respondeat superior* liability, and a 42 U.S.C. § 1983 damage claim . . . does not impose *respondeat* liability").

Because Title VII and § 1983 converge in this context, and given Dean's status as a *pro se* litigant, the Court will deem the complaint amended to assert a § 1983 claim against the ·Transit Authority and assess whether Dean's allegations are sufficient to state a cognizable § 1983 claim. *See Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (*pro se* complaints should be liberally construed; the Court must "interpret them to raise the strongest arguments that they suggest").

█ A § 1983 claim against a municipal agency such as the Transit Authority is cognizable where the alleged constitutional violation by TA employees resulted from either a government custom, policy, pattern or practice. *See Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "The policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation," *Sorlucco v. New York City Police Department,* 971 F.2d 864, 871 (2d Cir.1992); rather, a policy can be shown when "practices . . . are persistent and widespread, [such that] they could be so

permanent and well settled as to constitute a custom or usage with the force of law." *Id.* However, "before the actions of subordinate city employees can give rise to § 1983 liability, their discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id.* (internal quotations and citations omitted). A municipal custom or policy may also be shown by "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *See DeCarlo v. Fry,* 141 F.3d 56, 61–62 (2d Cir.1998) (internal quotations omitted). Finally, *Monell* liability exists "where an official has final authority over significant matters involving the exercise of discretion [such that] the choices he makes represent government policy." *Clue v. Johnson,* 179 F.3d 57, 62 (2d Cir.1999).

In *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected the application of a heightened pleading standard in civil rights cases alleging municipal liability. Thus, a plaintiff bringing a *Monell* claim need only comport with the general pleading requirements in Fed.R.Civ.P. 8, namely that the plaintiff provide a "short and plain statement of the claim," *Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160 (quoting Fed.R.Civ.P. 8(a)(2)); however, the statement of the claim must at least give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Cases subsequent to *Leatherman* make it clear that under the general pleading standard, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo,* 141 F.3d at 61. Furthermore, prior to *Leatherman,* the Second Circuit held that under the general pleading requirements, "an allegation of municipal policy or custom [is] insufficient if wholly conclusory," *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991); a holding unaffected by the *Leatherman* decision.

Here, even in light of *Leatherman* and the relaxed standards applied to *pro se* complaints, the Court finds that Dean has failed to allege that the disparate treatment by her supervisor resulted from any municipal policy, practice, or custom; she fails to allege a pervasive and widespread pattern of discrimination or actions of an official with final authority on policy matters. Accordingly, her claim against the TA must be dismissed; however, Dean is granted leave to amend her complaint to state facts supporting a *Monell* claim, if she can. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (court may not dismiss a *pro se* complaint without granting leave to amend at least once when a liberal reading of the complaint "gives any indication that a valid claim might be stated"). To do so, she must allege that the discrimination she experienced resulted from a government custom, policy, pattern or practice, consistent with the legal principles described above.

## II. *Dean II*

Dean brings gender discrimination and retaliation claims, pursuant to Title VII, against the Transit Authority and two of her supervisors, Ethridge and Ronan, based upon allegedly discriminatory and retaliatory acts occurring between January 2003 and February 2003. Specifically, Dean alleges that she suffered gender discrimination and retaliation when, after a

meeting in which she spoke out against her supervisors and after she had filed an EEOC complaint, a TA employee was "sent to her house ... to check on her" when she called in sick whereas no one else who had called in sick was visited. Compl. Ex. at 12–13.[3] Subsequently, "AGM Ethridge decided he did not want to pay [her] for the sick time ... [and] instead of following the [traditional disciplinary procedure] ... he just removed the money in advance." *Id.* In addition, Dean attaches a complaint she made to the TA on January 24, 2003, also submitted to the EEOC, concerning defendant Ronan. Therein, she states that Ronan lied "so that he could give [her] a violation" and notes other instances of "harassment" by Ronan. Compl. Ex. at 16–17.

The individual defendants move to dismiss, pursuant to Fed.R.Civ.P. 12(b)(b), because supervisors are not subject to liability under Title VII. In her *pro se* letter, Dean asks the Court to deny TA's motion because she also states a § 1983 claim against the individual defendants. Again, in response, defendants contend that Dean's allegations "do not suffice to allege [a] cause[ ] of action under § 1983." Transit Authority Reply Letter, dated December 23, 2003, at 2.

### A. Title VII and Individual Liability

█ Dean's Title VII claims against Ethridge and Ronan must be dismissed because "individual supervisors are not subject to liability" under Title VII. *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir.2003).

### B. § 1983

█ Although Title VII does not allow claims against individual supervisors, state actors can be sued in their individual capacities under § 1983 for violations of federal rights. *See Brennan v. City of White Plains*, 67 F.Supp.2d 362, 372 n. 2 (S.D.N.Y.1999) (discussing differences between employment discrimination claims brought under Title VII and § 1983; noting that "while supervisory personnel may be sued in their individual capacities under Section 1983, Title VII does not allow individual defendants with supervisory control over a plaintiff to be held personally liable"). Supervisory liability under § 1983 requires "personal involvement" by state actors in the alleged constitutional deprivation. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.2003). Given Dean's status as a *pro se* litigant, the Court will deem the complaint amended to assert gender discrimination and retaliation claims against the individual defendants under § 1983, and will assess whether Dean's allegations are sufficient to state cognizable claims against the individual defendants.

█ In doing so, the Court is cognizant of the Supreme Court's recent decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) that an employment discrimination plaintiff "need not plead a prima facie case of discrimination," *Id.* at 515, 122 S.Ct. 992; *see also Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir.2003) (Title VII plaintiff "need not set forth circumstances supporting an inference of discrimination in order to survive a Rule 12(b)(6) motion"); rather, consistent with Rule 8, the complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief ... [which must] give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992.

---

**3.** Again, Dean's allegations are drawn from her EEOC charge as her complaint states that her supporting facts are "attached." Compl. at 4.

Although *Swierkiewicz* concerned race and age discrimination claims brought under Title VII and the ADEA, its holding has been extended to broader contexts. *See e.g. Phillip,* 316 F.3d at 299 (*Swierkiewicz* applies to § 1981 claims); *Wait v. Beck's North America, Inc.,* 241 F.Supp.2d 172, 179 (N.D.N.Y.2003) (*Swierkiewicz* applies to hostile work environment claims). The Second Circuit has not yet addressed the application of *Swierkiewicz* to claims brought pursuant to § 1983, *see Toussie v. Powell,* 323 F.3d 178, 185 n. 3 (2d Cir. 2003) (declining to consider whether *Swierkiewicz* overruled Second Circuit's prior case law regarding pleading requirements for § 1983 conspiracy claims); however, *Swierkiewicz* speaks generally of employment discrimination claims and there is no basis for differentiating between discrimination claims brought under § 1983 or Title VII with regard to the requisite pleading standard, especially since, with the exception of § 1983's state action requirement, the elements of the claim are identical.

### 1. Ethridge

 With regard to the gender discrimination claim, Dean's allegations, when accepted as true, sufficiently establish Ethridge's personal involvement in the alleged discrimination. Furthermore, her pleadings satisfy *Swierkiewicz* because her allegations put Ethridge on notice of her gender discrimination claim and provide specific facts regarding when the alleged discriminatory acts occurred.

 However, Dean's allegations do not state a cognizable retaliation claim under § 1983. Although Title VII prohibits retaliation by employers when an employee has engaged in "protected activity," such as filing an EEOC complaint, *see Terry v. Ashcroft,* 336 F.3d 128, 141 (2d Cir.2003), a cognizable retaliation claim under § 1983 requires that the employee was

"discharged or disciplined for the exercise of First Amendment rights." *Ezekwo v. New York City Health & Hosps. Corp.,* 940 F.2d 775, 780 (2d Cir.1991). A First Amendment retaliation claim has two elements: "(1) that the conduct at issue was protected speech; and (2) that the speech played a substantial part in the employer's adverse employment action." *Id.*

 Public employee speech is protected only when it addresses "a matter of public concern." *Id.* at 781 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). "Complaints [that are] personal in nature and generally relate[ ] to [the employee's] own situation, are not matters of public concern," *Ezekwo,* 940 F.2d at 781; thus, they cannot form the basis of a retaliation claim. However, the Second Circuit has held that when an employee's complaints to a supervisor "implicate[ ] system-wide discrimination they ... unquestionably involve[ ] a matter of public concern." *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 143 (2d Cir.1993).

Here, Dean's complaint to the EEOC addressed her personal situation, not system-wide discrimination; accordingly, her retaliation claim against Ethridge must be dismissed. *See, e.g., Bates v. Bigger,* 192 F.Supp.2d 160, 172 (S.D.N.Y.2002) (employee who complained of discrimination did not state a retaliation claim because the complaints involved "personal grievances" which were related to plaintiff's "own employment interests"). Dean is, however, granted leave to amend her complaint to allege facts showing that any adverse employment action taken was in response to complaints that addressed matters of public concern, if she can.

### 2. Ronan

 Dean fails to allege that the "harassment" and the resultant disparate treatment she received from defendant

Ronan was based upon gender or was retaliatory, let alone in retaliation for the exercise of her First Amendment rights; thus, her allegations fail to state a cognizable gender discrimination or retaliation claim against Ronan. Accordingly, these claims are dismissed; however, the Court grants Dean the opportunity to replead, if she can, to allege facts supporting these claims.

## III. Appointment of Counsel

 The factors the Court must consider in determining whether to appoint counsel to a *pro se* civil litigant are the same in both the Title VII and § 1983 context:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61–62 (2d Cir.1986)). Although Dean has been granted leave to proceed *in forma pauperis,* her surviving claims do not seem "likely to be of substance." Most of the alleged gender discrimination appears to have occurred with female supervisors and Dean will likely have a difficult time providing evidence to establish that any disparate treatment she received was based upon her gender rather than job performance or other legitimate bases for making transfer, pay or training decisions. Furthermore, her cases do not present "complex" legal issues. It also appears that Dean is fully capable of investigating her claims. Attached to her complaint are documents such as employee schedules, pay stubs and sick-call lists, demonstrating that she is capable of investigation. Accordingly, Dean's request for appointment of counsel is denied.

## CONCLUSION

In *Dean I,* the complaint is dismissed, but the Court grants Dean leave to amend her § 1983 claim against the Transit Authority. In *Dean II,* the Title VII claims against the individual defendants are dismissed. The § 1983 gender discrimination claim against Ethridge survives; however, the retaliation claims against the individual defendants and the gender discrimination claim against Ronan are dismissed. Dean is granted leave to amend her retaliation claims against the individual defendants and her gender discrimination claim against Ronan. All amendments must be made within 30 days from the filing of this Memorandum and Order.

**SO ORDERED.**